HAPPEL & McAVOY (INC.) *v.* UNITED STATES (No. 3030[1])

[1] T. D. 42791.

United States Court of Customs Appeals, May 21, 1928

*James W. Bevans* for appellants.
*Charles D. Lawrence,* Assistant Attorney General (*John F. Kavanagh* and *James R. Ryan,* special attorneys, of counsel), for the United States.

[Oral argument February 15, 1928, by Mr. Bevans and Mr. Ryan]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

BLAND, Judge, delivered the opinion of the court:

This is an appeal by the importer from a judgment of the United States Customs Court (Reap. Circ. 749), which affirmed the appraised value of certain hydrogen peroxide imported from Austria in May and July, 1925.

This case includes two reappraisement cases, entry No. 706326, July 13, 1925, reappraisement No. 51725–A, and entry No 904931, May 25, 1925, reappraisement No. 52204–A. Since both importations involved the same facts, they were tried together in the court below and were tried together here and will be so decided.

The hydrogen peroxide was entered at 29 cents per kilo, which was the invoice price and the actual price paid therefor by the importer. The appraiser appraised it at 3.60 Austrian shillings per kilo plus an internal turnover tax of $4\frac{1}{2}$ per centum, making the total appraised value 3.762 Austrian shillings per kilo.

The importer appealed to reappraisement in both cases. Associate Justice Brown sustained the entered value. The Government thereupon filed an application for review, and the United States Customs Court, in an opinion written by Associate Justice Adamson, affirmed the decision of Associate Justice Brown.

The Government then filed an application for a rehearing, which was granted. Upon rehearing, the opinion of the court was rendered by Associate Justice Young (Associate Justice Adamson dissenting), in which decision the appraised value, 3.762 Austrian shillings per kilo, was affirmed and the finding of Associate Justice Brown reversed.

Upon appeal to this court the importer contends that the United States Customs Court proceeded upon a wrong theory in so far as it held "that the value of merchandise returned by an appraiser is presumed to be correct, and that the burden is upon the importer to

overcome such presumption" (appellant quoted), and cites and quotes from *United States* v. *Tadross & Co. et al.*, 14 Ct. Cust. Appls. 10, T. D. 41528, and argues therefrom that the case before the single justice was de novo and that the issue must be determined from the record before him; that that record, according to the views of the court below, "did not establish the value in accordance with any one of the methods prescribed by law." Appellant further insists that the record discloses that the value returned by the appraising officer was not an open foreign market value within the meaning of section 402 of the Tariff Act of 1922, and that, consequently, the price paid for the imported merchandise became, presumptively, the dutiable value, for appraisement. The importer further contends that it did submit proper evidence to show such dutiable value, which it contends was the purchase price.

The Government urges that upon the plaintiff, in this kind of case, rests the burden of showing, by a fair preponderance of the evidence, that the appraised value was wrong, that its claims are correct, and that appellant failed to make such showing.

A reading of the opinion by the single justice and the ruling and dissenting opinions in the court below and the various contentions in the briefs of counsel discloses considerable confusion on the question of burden of proof and presumption of correctness attaching to the appraiser's action. We think it well to state here the situation, as we see it, which confronted each of the trial tribunals below and which now confronts this court.

Upon appeal to reappraisement the hearing before the single general appraiser is a trial *de novo*. *United States* v. *Tadross & Co. et al., supra; Johnson Co.* v. *United States*, 13 Ct. Cust. Appls. 373, T. D. 41318. In this trial *de novo* the appraised value is to be determined by the single appraising justice from the weight of the evidence, and, in weighing the evidence, no presumption of the correctness of the appraiser's action can be weighed against the evidence. *Morse Bros. (Inc.)* v. *United States*, 13 Ct. Cust. Appls. 553, T. D. 41432; *Lee & Co.* v. *United States*, 15 Ct. Cust. Appls. 202, T. D. 42236.

Obviously the single justice sitting in reappraisement regarded the evidence of the importer as sufficient to establish the entered value as the correct dutiable value.

After appeal was taken to the United States Customs Court in re-reappraisement that body was called upon to review the action of the single justice upon the record made by him. Their duties were appellate, not, however, in the sense that the duties of this court in that kind of case are appellate, since this court in reappraisement matters considers the evidence only when it becomes a question of law. The court below, therefore, when it reviewed the action of the

single appraising justice, was required to determine whether or not the decision of the single appraising justice was supported by the weight of the evidence.

Obviously it found that the weight of the evidence was against his decision and, having so found, reversed it and found the dutiable value to be the foreign market value or the same value which had been found by the United States appraiser. The court below then made its finding of facts and conclusions of law, which are as follows:

(1) That the merchandise involved herein consists of hydrogen peroxide imported from Austria.

(2) That the appraiser appraised the merchandise herein at 3.762 Austrian shillings per kilo, containers included.

(3) That the exporting firm was the only one in Austria which manufactured hydrogen peroxide and the only one in Austria which exported hydrogen peroxide to the United States, and that all of its exports thereof to the United States were made to the importing corporation herein.

(4) That the importing corporation herein failed to show by the evidence that the sale prices to it were freely offered prices, and also failed to show that the quantities purchased were the usual wholesale quantities.

(5) That the evidence taken as a whole shows that the usual wholesale quantities of the merchandise herein ranged from 2 to 10 carboys.

(6) That the merchandise imported in the case at bar consisted of 140 carboys, and that such quantity was very much larger than the usual wholesale quantity.

(7) That all of the product of the exporting firm for Austrian consumption was sold to one man called "Neuber"; that the sales varied to him in quantity from 70 to 140 carboys each; that such sales were not in the usual wholesale quantities; and that the prices at which the merchandise was sold to Neuber were not freely offered to others.

(8) That the prices at which merchandise such or similar to that involved herein was freely offered for sale at the times of exportation thereof to the United States, to all purchasers in the principal markets of Austria, in the usual wholesale quantities, and in the ordinary course of trade, including the cost of containers and all other costs, charges, and expenses incident to placing the merchandise in condition packed ready for shipment to the United States, was 3.762 Austrian shillings per kilo.

And as matters of law we have reached the following conclusions:

(1) The value of the merchandise herein found by the appraiser is presumptively correct and such presumption was not overcome by the evidence.

(2) There was no export value of the merchandise herein established by the evidence.

(3) The foreign value of the merchandise herein is as set forth in paragraph 8 of the findings of fact herein.

(4) The dutiable value of the merchandise herein is 3.762 Austrian shillings per kilo, cost of containers included.

The decision of the justice sitting in reappraisement is therefore reversed, and judgment will issue herein determining the dutiable value of the merchandise herein to be 3.762 Austrian shillings per kilo, cost of containers included.

If there is any substantial evidence in the record supporting the special finding of facts it is the duty of this court to affirm the decision of the court below. If, however, it found any material fact without any substantial evidence to support it, it would be error, as a matter of law, and which, upon being assigned as error, as it has been in this

case, would require a reversal by this court. We have gone into the evidence carefully, and agree with the court below that the record does not establish an export value and that if any value was established to the satisfaction of anyone it must have been a foreign market value which was the same value as found by the local appraiser. We think that the record contains some very substantial evidence tending to show that there was, on the date of exportation, in the principal markets of Austria a wholesale market value which answers to the definition of such value in section 402 of the Tariff Act of 1922, and that such value was 3.762 Austrian shillings per kilo, and which was higher than the purchase price, or any other value claimed in this case.

It will not be necessary for us to recount all the evidence in the case. We could properly content ourselves by saying that there was substantial evidence to support the finding of the court below, but in view of the earnestness of counsel in urging that the record below affords no substantial proof of a foreign market value, we deem it proper to point out some of the salient facts in the record.

The evidence consists of the testimony of two witnesses for the importer, Adolph Gerstenzang and Robert Haim, and one witness for the Government, L. C. Bowen, and a report of George R. Coxe, special agent and customs representative, which report was made in compliance with the directions from the Treasury Department.

The first witness, Gerstenzang, was the American importer. His whole testimony may be summed up in the statement that he entered the merchandise at what he paid for it and that it cost him 29 cents f. o. b. factory, and that his other expenses were freight and insurance and $1.60 for each carboy, and that he at no time paid 3.762 plus 4½ per centum tax (appraised value).

Robert Haim, called by appellant, testified that he was the manufacturer of the hydrogen peroxide in Austria and that he sold, to the importer in this case, the goods in question for 29 cents per kilo f. o. b. factory and $1.60 for each carboy; that he sold the goods for home consumption for 1.80 Austrian shillings and that he sold it to a retailer, who in turn sold it to retailers, and that he would sell it at this price to anyone if they would take the quantity, to wit, 70 carboys, which was regarded as a carload lot; but that he made an agreement to sell only to one Neuber, and that Neuber was his only customer, and that if anyone came to him to purchase the merchandise that he would refer them to Neuber, in most cases; that if they should buy 70 carboys, he would sell them in this quantity, but he would pay Neuber a small commission—1½ per centum; that Neuber is the only person to whom his company sells the merchandise. He testified that he did not know what Neuber got for his goods, but that he would sell them to retailers and manufacturers, mostly to retailers and large manufacturers, in 2, 3, 5, and 10 carboy lots; that most

of Neuber's goods go to retailers and that the retailers sell to manufacturers, and that the goods are used for bleaching. He stated that his company was the only manufacturer of hydrogen peroxide in Austria, and that there were no importations of this merchandise from other countries into Austria, and that only 5 per centum of his production was used for home consumption, the remaining portion going out over the world, and from 8 to 10 per centum of the same going to America, through the importer herein.

L. C. Bowen, who testified for the Government, was United States examiner, and it was through him that the special agent's report was introduced. He stated that he knew nothing about the prices or other facts pertinent to this merchandise in Austria, except such as were shown by the report. Then he testified concerning some of the things which the report showed, and stated that he based his appraised value upon the information contained in the report, and that the lowest price for home consumption shown by the report was 3 shillings 60 (3.60), to which was added a 4½ per centum turnover tax, and that this price represented the resale price from the manufacturer's only customer, and that this price was a wholesale price. He stated that he did not know whether any sale had ever been made at the price quoted, and that the report did not show any particular sale, but that it did show an agreed price by an organization which controlled the selling price.

The report of the special agent, among other things, shows the following:

*Foreign value*

The same goods are sold in Austria.
The following are the prices as fixed by the association for inland sales:

| | | |
|---|---|---|
| 4,200 kg | Austrian shillings | 3. 60 |
| 1,200–4,200 kg | do | 3. 90 |
| Less than 1,200 kg | do | 4. 10 |

These prices are not f. o. b. destination with packing included. The turnover tax of 4½%, which is waived on exports, is charged extra on home sales.

The manufacturer, however, has only one customer in Austria, the Neuber A.–G., which formerly manufactured hydrogen peroxide. In order to get rid of this competition, the Oesterreichische Chemische Werke agreed to only sell to Neuber in Austria and at special prices. Mr. Skowronels said that if anyone in Austria wanted to buy from them, they referred the customer to Neuber.

The manufacturer's price to Neuber is Austrian shillings 1.80 per kilo for technical grade and sh. 2.075 per kilo for medical grade. These prices are not f. o. b. destination with packing included. The 4½% turnover tax is charged extra. These prices were verified from retained copies of invoices, but Mr. Skowronels refused to allow me to make copies. Neuber buys outright from the manufacturer and resells to his own customers.

Putting the testimony and the report together, we think the record affords some substantial evidence tending to show that there were sales in wholesale quantities in Austria on or about the date of

167

exportation of the merchandise involved, in quantities ranging from 2 to 10 carboys, for 3.60 Austrian shillings per kilo, and that these were the usual wholesale quantities freely offered for sale to all purchasers in the principal markets of Austria, in the ordinary course of trade. When other properly dutiable charges are, added to this, the appraised value of 3.762 Austrian shillings per kilo is arrived at.

It is clear that 5 per centum of the production of this factory is sold in Austria, and the testimony is uncontradicted that when it is sold to the retailer by Neuber it is sold at 3.60, which is an agreed price. Certainly this is some substantial evidence of a foreign market value.

The judgment of the United States Customs Court, holding the dutiable value of the merchandise to be 3.762 Austrian shillings per kilo, cost of containers included, is *affirmed*.