UNITED STATES *v.* WHEELER, ELDER & ELDER ET AL. (No. 3176)[1]

United States Court of Customs and Patent Appeals, November 4, 1929

*Charles D. Lawrence*, Assistant Attorney General (*John F. Kavanagh* and *Oscar Igstaedter*, of counsel), for the United States.
*Frank P. Wilson* for appellees.

[Oral argument October 16, 1929, by Mr. Igstaedter]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

LENROOT, Judge, delivered the opinion of the court:

This appeal involves our review of the action of the first division of the United States Customs Court in reappraisements Nos. 82459–A, 82461–A, and 83211–A. The merchandise involved consists of three importations of gear-hobbing machines and parts thereof from Germany by George Scherr & Co. (Inc.), two of which were entered at the port of Los Angeles and the third at the port of New York. The machines are used for cutting gears for automobiles.

---

[1] T. D. 43691.

The merchandise was appraised by the local appraisers on foreign value. The importer appealed to reappraisement. Associate Justice Weller, sitting in reappraisement, appraised the merchandise based upon United States value, and the Government appealed. The decision of the Appellate Division of the Customs Court is as follows:

These are applications for review of findings of value of Associate Justice Weller. The merchandise involved consists of two gear hobbing machines and parts thereof. The question of whether the values found by Justice Weller shall be affirmed depends upon whether similar machines were sold prior to the exportation of this merchandise for home consumption in Germany. The Government contends that because these machines were purchased from a firm having the exclusive selling agency for such machines in all of Germany outside of Saxony that the manufacturers having sold these machines to them establishes that there was a home market value for them in Germany. The record does not sustain this contention, in our view, inasmuch as the machines were purchased by such agents for the importers on order thereof. Another, and we think stronger element in the case favoring the contention of the importers, is that the machines imported are very different from the machines of similar character used in Germany, particularly in that they are set to the inch measurement, whereas the machines used in Germany are equipped on the metric system.

We find that the evidence sustains the values found below as representing the United States values of the merchandise on the respective dates of shipment, and they are therefore affirmed.

The Government makes three major contentions in its assignments of error:

1. That the lower court erred in not stating its action in a written decision, setting forth the facts on which the finding is based and the reasons therefor.

2. That the lower court erred in finding that the merchandise had no foreign value within the meaning of subdivision (b) of section 402 of the Tariff Act of 1922.

3. In arriving at a United States value in a manner contrary to law by allowing 10 per centum for selling commission from the price at which the machine was freely offered for sale in the principal market of the United States, in addition to the statutory deductions provided for in subdivision (d) of section 402.

This being a reappraisement case, this court can review the judgment of the Customs Court on questions of law only.

Upon the question of whether the decision of the lower court is a compliance with section 501, requiring it in reappraisement cases to set forth the facts on which its finding is based and the reasons therefor, we think it sufficiently appears from the decision that it found there was no foreign value of the merchandise and the facts and reasons for such findings are sufficiently stated.

Upon the question of United States valuation, there are no facts stated in the decision upon which the ultimate finding is based, but an examination of the evidence shows that in order to reach the conclusion that it did the court must have found all of the facts as contended for by the importer. Therefore, while we would observe, as we have had occasion to do in many other cases, that the lower court should have made more specific findings of fact, instead of remanding

the case for such specific findings, we dispose of it in the same manner as if such specific findings had been made.

Upon the question of foreign value of the merchandise, while the record is very unsatisfactory, we think there was substantial evidence upon the trial to support the findings of the lower court that there was no such foreign value, and therefore its finding in that respect must be sustained. *Happel & McAvoy* v. *United States*, 16 Ct. Cust. Appls. 161, T. D. 42791. In this connection we call attention to the fact that there are several exhibits printed in the record in the German language, unaccompanied by translations. This court should not be expected to secure translations of exhibits, and wherever an exhibit in a foreign language is received in evidence which the parties to the cause feel should be considered on review by this court, a translation should accompany the exhibit.

Upon the question of United States value, the question is as to whether there was any substantial evidence to support the value of the merchandise found by the court.

Subdivision (d) of section 402, relating to United States value of imported merchandise, reads as follows:

> The United States value of imported merchandise shall be the price at which such or similar imported merchandise is freely offered for sale, packed ready for delivery, in the principal market of the United States to all purchasers, at the time of exportation of the imported merchandise, in the usual wholesale quantities and in the ordinary course of trade, with allowance made for duty, cost of transportation and insurance, and other necessary expenses from the place of shipment to the place of delivery, a commission not exceeding 6 per centum, if any has been paid or contracted to be paid on goods secured otherwise than by purchase, or profits not to exceed 8 per centum and a reasonable allowance for general expenses, not to exceed 8 per centum on purchased goods.

An examination of the record discloses that the merchandise, consisting, as has been stated, of three separate shipments, was sold to three different parties. One of them was sold by the importer direct to the ultimate customer, and the other two through agents or dealers to the ultimate customers, the importer contending that the sales were made to its agents or dealers, and that such agents or dealers sold the merchandise to the ultimate customers.

It is claimed by the importer that the selling price of the merchandise, from which United States value is determined, is the price of the merchandise at which it is sold to dealers, which it claims is 10 per centum less than the price paid therefor by the ultimate customer. Or, putting it in another way, a dealer's discount of 10 per centum is allowed from the price paid by the ultimate customer for the merchandise, and that such discount should be deducted from the price paid by the customer, together with other statutory deductions allowed by law, in arriving at United States value.

The Government, on the other hand, claims that the 10 per centum referred to is merely a dealer's or agent's commission, and that a deduction of such commission from the price paid by the ultimate customer is not permitted by said section 402 (d). If the fact is that the 10 per centum was a commission paid by the importer to its agents, the Government is correct and its deduction is not permitted by said section.

If, on the other hand, the merchandise in question was freely offered for sale to all purchasers who were dealers, at a discount of 10 per centum from the prices paid by the ultimate customers, then we are not prepared to say that it was error in finding, as the court below must have found, that it was the price paid by the dealer that fixes the selling price, or market value, of the merchandise from which its United States value is determined.

We may observe, however, that the general rule is that the price at which merchandise is sold to a limited number of favored purchasers, in quantities greater or less than wholesale quantities, is not proper evidence of the market value of such merchandise. *United States* v. *International Forwarding Co.*, 13 Ct. Cust. Appls. 579, T. D. 41436.

Only two dealers are mentioned in the testimony, Louis G. Henes, of Los Angeles, and Frank E. Artz, of Chicago.

Fritz Koenig, secretary of the importer corporation, testified that one machine, designated TO-25, embraced in reappraisement No. 82459-A, was sold to said Henes, and by him sold to the Johnson Foundry & Machine Works for $11,445. He further testified as follows:

Q. You sold it to the Johnson Foundry & Machine Works?—A. Henes actually sold it to them.

Q. He was an agent for you?—A. Henes is a machine dealer, and he is our exclusive dealer in that territory.

Q. He is your exclusive dealer or agent, which?—A. He is a dealer and our agent.

Q. But your sale was for the Johnson Foundry & Machine Works?—A. Yes, sir.

Q. And Henes got the order for you from Johnson?—A. Yes, sir; for which he received 10 per cent commission or discount.

There was no evidence that machines similar to the one here in question were freely offered to purchasers in the ordinary course of trade, or that any dealer not an agent of the importer would be allowed the 10 per centum discount. The fact that importer's dealer or agent did receive a discount of 10 per centum does not in any way establish a selling price to dealers at 10 per centum less than the price paid by the ultimate customer.

The same witness testified that another machine was sold to importer's agent, Frank E. Artz of Chicago. This machine is

covered by reappraisement No. 82461–A. As to this transaction the same witness testified as follows:

Q. Now take reappraisement 82461–A; that was a gear-hobbing machine invoiced as TO–13; you bought that, you say?—A. I handled that also.

Q. And did you sell it?—A. We sold the machine to our agent in Chicago, Frank E. Artz.

Q. And is this the order for it?—A. That is the order from the ultimate customer to Mr. Artz.

The order referred to was offered in evidence, from which it appeared that the price paid by the ultimate customer was $4,460. The same witness further testified as follows:

Q. Now, was there a change in the market price of this machine in the United States after the sale was made by you, and before shipment was made?—A. Yes; there was a change.

Q. The period between the sale and the shipment was from March 31, 1927 to July 19, 1927; did the market go up or down?—A. It went up.

Q. You advanced your price after March 31, 1927, when it was sold, and before July 19, 1927, when it was shipped?—A. Yes, sir.

Q. You sold it for how much?—A. $4,014, and we were offering it for sale on July 19 at $4,941.

*       *       *       *       *       *       *

Q. Now then, deducting the expenses of $303.28 from the price at which you were freely offering it for sale, to wit, $4,941, made a balance of $4,637.72?—A. That is correct.

As to reappraisement No. 83211–A, the witness testified that the merchandise involved was parts of gear-hobbing machines. He further testified:

Q. Did you purchase those and sell those?—A. I purchased and sold those myself.

Q. And have you the purchase order and acceptance?—A. Yes; this is the order and the acceptance.

The order and acceptance were received in evidence. From these it appears that the transaction was direct between the importer and the ultimate customer and the price named in the order was $950. Nevertheless the importer, in its illustrative Exhibit D, setting forth its claim for United States value, states the selling price of the merchandise to be $855, or 10 per centum less than the price named in the order, and this amount of $855 was evidently accepted by the court as the selling price, or market value, from which United States value should be determined.

We are compelled to hold that there was no evidence sustaining the selling price or market value approved by the court in reappraisements 82459–A and 83211–A. In 82459–A there was no evidence that a dealer's discount of 10 per centum from the price paid by the ultimate customer was freely offered to all dealers; and there is no evidence anywhere in the record that it was the custom of either the importer or others engaged in selling this line of merchandise to

grant to dealers a discount of 10 per centum from the prices paid by the ultimate customers. The only evidence in the record upon this point is that in this particular sale a discount or commission was allowed to the importer's exclusive agent. This is no evidence of the value of the machine in question, or that the selling price there in question in wholesale quantities was 10 per centum less than the price paid by the ultimate customer for the machine.

In reappraisement No. 83211–A there is no evidence whatever warranting a deduction of 10 per centum from the price paid by the ultimate customer to the importer. There is no evidence that importer's dealer, in this case Artz, was allowed any discount whatever from the price paid by the ultimate customer. Therefore, it was an error of law for the court below to allow in these two cases deductions of 10 per centum from the prices paid by the ultimate customers in arriving at the selling price of the merchandise as a basis for determining United States value.

As to reappraisement No. 82461–A, there is testimony that as to the merchandise covered by this reappraisement the importer was freely offering similar machines for sale for the price of $4,941, and there is some evidence at least that this was the market value. The sum of $4,941 was accepted by the court below as the selling price of the machine in arriving at United States value. There being substantial evidence supporting the judgment of the court below, it must be *affirmed*, so far as it relates thereto.

The Government further contends that there was no sufficient evidence to justify the deduction of 8 per centum for profit and 8 per centum for general expenses, and further that such deductions should not have been made from the gross selling price. As to sufficiency of evidence upon the first point, there was substantial evidence justifying such deductions, and as to the second point this court has ruled adversely to the contention of the Government in *United States* v. *Beer & Co.*, 15 Ct. Cust. Appls. 140, T. D. 42215.

The judgment is *modified*, being *reversed* as to reappraisements 82459–A and 83211–A, and *sustained* as to reappraisement 82461–A. The cause is *remanded* for further proceedings consistent with the views herein expressed.