UNITED STATES *v.* MALHAME & Co. (No. 3417)[1]

---

[1] T. D. 45276.

United States Court of Customs and Patent Appeals, November 2,
1931

*Charles D. Lawrence,* Assistant Attorney General (*Thomas J. Canty,* special
attorney, of counsel), for the United States.
*Siegel & Mandell* (*Samuel T. Siegel* of counsel) for appellee.

[Oral argument October 16, 1931, by Mr. Lawrence and Mr. Siegel]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT,
Associate Judges

GARRETT, Judge, delivered the opinion of the court:

This appeal is by the Government in a reappraisement proceeding.

The merchandise which occasioned the issue consists of what are
called prayer books purchased by Malhame & Co. from Henry Proost
& Co., the manufacturers or publishers of the books, of Turnhout,
Belgium, from which country they were imported into the United
States, being entered at the port of New York in May, 1930.

Section 402 (a) of the Tariff Act of 1922 provides that in appraising
imported merchandise the value to be placed upon it shall be (1) the
foreign value or the export value, whichever is higher; (2) if neither
the foreign value nor the export value can be ascertained to the
satisfaction of the appraising officers, then the United States value;
(3) if none of the three aforementioned values can be ascertained to
the satisfaction of the appraising officers, then the cost of production.

Paragraphs (b), (c), and (d) of said section 402 give the statutory
definitions of the respective values mentioned in paragraph (a)—

that is, they define what must be shown to establish foreign value, what must be shown to establish export value, and what must be shown to establish United States value. We here quote these three paragraphs in full:

(b) The foreign value of imported merchandise shall be the market value or the price at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual whole-sale quantities and in the ordinary course of trade, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

(c) The export value of imported merchandise shall be the market value or the price, at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual whole-sale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and cover-ings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States. If in the ordinary course of trade imported merchandise is shipped to the United States to an agent of the seller, or to the seller's branch house, pursu-ant to an order or an agreement to purchase (whether placed or entered into in the United States or in the foreign country), for delivery to the purchaser in the United States, and if the title to such merchandise remains in the seller until such delivery, then such merchandise shall not be deemed to be freely offered for sale in the principal markets of the country from which exported for exporta-tion to the United States, within the meaning of this subdivision.

(d) The United States value of imported merchandise shall be the price at which such or similar imported merchandise is freely offered for sale, packed ready for delivery, in the principal market of the United States to all purchasers, at the time of exportation of the imported merchandise, in the usual wholesale quantities and in the ordinary course of trade, with allowance made for duty, cost of transportation and insurance, and other necessary expenses from the place of shipment to the place of delivery, a commission not exceeding 6 per centum, if any has been paid or contracted to be paid on goods secured otherwise than by purchase, or profits not to exceed 8 per centum and a reasonable allow-ance for general expenses, not to exceed 8 per centum on purchased goods.

It will be observed that the distinction between foreign and export value is, substantially, that in the former the test is the market value or the price at which the sales or offers are made "to all purchasers in the principal markets of the country from which exported," while in the latter the test is the market value or the price at which the sales or offers are made "to all purchasers * * * for exportation to the United States." (Italics ours.)

Under the statute it is necessary to determine the foreign value, if there be one, by the tests prescribed in paragraph (b), supra, and also the export value, if there be one, by the tests prescribed in paragraph (c), supra. The merchandise is then to be appraised at whichever of the found values is the higher. If neither a foreign nor an export

value *"can be ascertained to the satisfaction of the appraising officers,"* then the merchandise is to be appraised at the United States value determined by the tests prescribed in paragraph (d), *supra.* (Italics ours.)[1]

In the instant case the local appraiser was unable, presumably, to ascertain to his satisfaction either a foreign or an export value for the merchandise. Hence, it was, by him, appraised at the United States value. In so appraising it he rejected the value at which the importer had entered it, which was the invoice price plus a 1 per centum tax (evidently some Belgian tax required to be added), and plus $7 for packing. It was the claim of the importer in the proceedings below and is his claim here that there was no foreign value and that the invoice price, the price he presumably paid for the merchandise and at which he entered it, was the export value and, therefore, the correct dutiable value.

Hence, he appealed to reappraisement under the provisions of section 501 of the Tariff Act of 1922. The appeal was heard, as the statute provides, by a single judge of the United States Customs Court sitting in reappraisement. The opinion of the trial judge was quite brief. He said:

On the uncontradicted testimony on behalf of the importers, I find the entered value to be *correct.* (Italics ours.)

Judgment was entered accordingly.

The Government thereupon made application for a review of the single judge's decision. That application was heard by the First Division of the United States Customs Court. That tribunal made a finding to the effect that there was no foreign value, but that there was an export value which was the entered value, and affirmed the judgment of the trial judge.

The Government then appealed to this court, assigning errors.

In determining the issue or issues presented to us it is essential, first, to inquire into the measure of duty which devolved upon the importer under the facts and law as we have stated them.

It has been often held by us that, in cases such as this, where an appeal is taken to a single judge sitting in reappraisement, no presumption of correctness attends the appraisement of the local appraiser, and the trial before the single judge is a proceeding *de novo.* *Meadows, Wye & Co. (Inc.) et al.* v. *United States*, 17 C. C. P. A. (Customs) 36, 42, T. D. 43324; *Happel & McAvoy (Inc.)* v. *United States*, 16 Ct. Cust. Appls. 161, T. D. 42791, and cases there cited.

The issue is not whether the value returned by the appraiser is the proper dutiable value of the merchandise, but whether there is (a)

---

[1] If none of these values can be found then the appraisement is to be on the basis of the cost of production determined by the tests prescribed in paragraph (e) and its subparagraphs. Cost of production not being here involved it is unnecessary to quote paragraph (e).

a foreign value or/and (b) an export value, and, if both, which is the higher, and the importer, having been the appealing party in the first instance, it was incumbent upon it "to meet every material issue involved in the case." *Meadows, Wye & Co.* v. *United States, supra.* If the importer failed to do this, then his appeal was subject to dismissal by the trial court, in which event the value fixed by the local appraiser—in this instance the United States value—would have remained in full force and effect. *United States* v. *F. B. Vandegrift & Co. et al.,* 16 Ct. Cust. Appls. 398, T. D. 43120.

Under the rules stated it was incumbent upon the importer in this case, upon its appeal to reappraisement, to show, as in all judicial proceedings, (a) what the foreign value as defined by paragraph (b), *supra,* was, or that there was no such foreign value; and (b) what the export value, if any, as defined by paragraph (c), *supra,* was.

If the importer failed to show any one of these essential elements, then his appeal was subject to dismissal by the trial judge.

The record and the brief filed in behalf of the Government are such as to create doubt in the mind of this court as to just what the Government's position in the case is with reference to the question of foreign value.

At one place in the brief it is said:

There is not a scintilla of evidence in the record to show whether or not there was a foreign value for the merchandise.

At another place we find:

There is no substantial evidence of * * * foreign value * * * 'in the record * * *.

But in stating the issue, the brief says:

The issue herein is whether the export value or the United States value is the correct dutiable value.

This statement of the issue might well be taken as an admission by the Government that there was no foreign value for the merchandise, and the failure throughout the brief, except by the fugitive utterances quoted, *supra,* and throughout the oral argument, to place emphasis upon this element, taken in connection with its statement of the issue, inclines us to the opinion that the Government does admit that there was no foreign value as defined by paragraph (b), *supra.*

The character of the merchandise itself is somewhat indicative of the fact that there was probably no market for it for use in Belgium. The books are printed in the English language.

Turning from the briefs to the record, we question seriously whether there is any assignment of error sufficiently specific to cover the matter of foreign value, so as to bring that question before us.

As we view it, assignment 12 is the only one of the 14 assignments of error which touches upon the question of foreign value. It reads:

In denying the Government's motion to dismiss the appeal to reappraisement on the ground that no evidence was adduced to show that there is a freely offered for sale price either for *home consumption* or for export. (Italics ours.)

This assignment of error is puzzling.

It must be borne in mind that the appeal to us was by the Government and was from the judgment of the First Division of the Customs Court, not from the judgment of the single judge. The appeal from the judgment of the single judge to the First Division of the Customs Court was likewise a Government appeal. Before that tribunal assignment 12 might logically have been made, the Government having moved a dismissal before the single judge, but same was not made there, and obviously it is a misfit in the proceedings before us.

All the assignments of error made before us are supposedly leveled at the judgment of the First Division. Our judgment must deal with its judgment and not directly with the judgment of the single judge.

The First Division of the Customs Court might, of course, have held that the single judge should have dismissed the importer's appeal and have reversed and remanded the cause to him with instructions to do so, but it sustained the judgment of the single judge and made no ruling upon any motion before him to dismiss. So there is nothing in the decision of the First Division upon which to predicate assignment 12 here, however proper it might have been in the appeal which was before it.

We have dwelt upon the foreign-value phase at greater length than to some may seem justifiable, but in so doing we have been moved by two reasons:

First, a desire to make plain, if possible, what is required in these reappraisement cases;

Second, in this particular case, if there were a proper assignment of error upon the failure of the record to show foreign value as defined in paragraph (b), *supra,* or the absence of a foreign value, and such assignment were insisted upon, we should have to sustain it. We are unable to find in the record any evidence whatsoever relating to the presence or absence of a foreign value, as defined in paragraph (b), *supra,* of the Tariff Act of 1922.

Such a holding would finally dispose of the case, so far as this court and the tribunals below are concerned, unless we should feel that a remand for a new trial were proper, and there would be no necessity of our considering the matter of export value.

Upon the whole record, however, we feel that it is not improper to treat the matter of foreign value, as distinguished from export value, as being eliminated from the case. In other words, we assume

it to be conceded that for the particular merchandise involved, there was no foreign value, as defined in paragraph (b), *supra*.

This brings us to a consideration of the question whether the record contains any substantial evidence supporting the contention of the importer and the judgment of the court below that (a) there was an export value, and (b) that the value at which importer entered the merchandise was such export value. To establish these facts, we repeat for emphasis, the proofs must show all the elements set forth in paragraph (c) of the Tariff Act of 1922.

It seems proper here to repeat the familiar rule that in a reappraisement proceeding this court is not charged with the duty of weighing the testimony and determining whether a finding of fact by the Customs Court is in accord with or against the weight of the evidence. It is only concerned with the question of whether there is *any* substantial evidence to support such finding. If there be any such substantial evidence this court will not disturb the finding. *United States* v. *Wakem & McLaughlin*, 14 Ct. Cust. Appls. 161, T. D. 41692, and cases therein cited.

In the trial before the single judge two witnesses testified—Mr. Gabriel Malhame, of Malhame & Co., the appellee, and Mr. Charles Braun, a buyer for Benziger Bros., who are engaged, according to Mr. Braun's testimony, in "selling religious articles—prayer books."

Mr. Braun gave no testimony which we can regard as being in any way helpful in determining the issue. The firm with which he was connected never bought any books even similar to Exhibit 1–A from Proost & Co. of Belgium, the seller to appellee, nor did it ever buy any of those represented by Exhibit 1–B in the binding which those imported bore.

He gave no information about prices, except a general statement that for such books as the firm did purchase "we paid the regular price which is charged to everybody," and when asked if he remembered what that price was, replied, "That depends on the binding." His testimony is valueless in the case because beside the issue. Mr. Malhame's testimony established the fact that his company's purchases were, apparently, in the regular course of business; that the transactions were actual purchases, not consignments; that the company had no exclusive contracts with Henry Proost & Co.; that by an arrangement made between his company and P. J. Kennedy & Sons the latter received a part of a shipment of the books represented by Exhibit 1–B; that Malhame & Co. were the only ones known to the witness to have imported any of those represented by Exhibit 1–A, and that Proost & Co. does not carry the books in stock but "makes everything to order only."

Nowhere in the testimony of either witness are we able to find any statement to show that the entered value was, at the time of the

exportation of the merchandise from Belgium to this country, the price at which Proost & Co., or anyone else, was freely offering such or similar merchandise for sale to all purchasers in the principal markets of Belgium, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States.

That is substantially what the statute says in defining the export value which must be taken for tariff purposes. It is a very plain and unambiguous statute, and we are at a loss to understand why in so many of these reappraisement cases, which reach this court, the party originally appealing to reappraisement, upon whom it is incumbent to make the proof which will meet the statutory requirement, not only fails to make it but, seemingly, fails to try to make it.

It is our understanding that our Government is the only government in the world to provide a judicial review in cases such as this, and the statute relating to proofs in such cases is a liberal one. In section 501 of the 1922 tariff act it is provided:

* * * In finding such value affidavits of persons whose attendance can not reasonably be had, price lists, catalogues, reports or depositions of consuls, special agents, collectors, appraisers, assistant appraisers, examiners, and other officers of the Government may be considered. * * *

So a character of testimony is made admissible in these cases which would not be admissible in ordinary litigation. Furthermore, as has been stated, when an appellant goes to the courts there is no presumption of correctness as to the local appraisement, such as attaches to the classifications by collectors in protest cases. The appellant can proceed with proofs with no adverse presumption to overcome.

In the instant case the member of the appellee company who actually made the purchases abroad was not examined; there was no deposition or affidavit from the foreign seller as to prices, no lists nor catalogues—in short, practically nothing which bears directly upon the vital issue.

So far as the record discloses it seems never to have occurred to any one of those upon whom the duty of proof rested to attempt to secure the testimony of the persons who had the best opportunity of knowing the facts.

The courts may not properly supply from imagination the essentials in which the proofs are deficient.

The court below is quite correct in the statement that as a matter of law a single sale might establish an export value. But, in order to do so, it must appear from proof that such a sale accords with a free offering at that price—

to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, * * *.

The burden of showing this rested, in this case, upon the importer. It was not incumbent upon the Government to present proof to sustain the United States value, and the importer presented no proof of export value which it became necessary for the Government to overcome.

We are unable to find in the record anything to sustain appellee's contention except the statements above recited from which we are asked to make inferences. There is no substantial evidence to support the decision of the court below, and, under this record, the original appraisal of the United States value should stand.

It follows, therefore, that the judgment appealed from must be, and the same is, *reversed*.