UNITED STATES *v.* NIPPON TRADING CO.

No. 5608.—Invoices dated Nagoya, Japan, January 24, 1930, and January 25, 1930. Certified January 25, 1930, and January 27, 1930.
Entered at San Francisco, Calif., February 11, 1930, and February 17, 1930.
Entry Nos. 15589 and 15865.

Third Division, Appellate Term

(Decided April 1, 1942)

*Paul P. Rao,* Assistant Attorney General (*Daniel I. Auster,* special attorney) for the appellant.

*Lawrence & Tuttle* (*George R. Tuttle* of counsel) for the appellee.

Before CLINE and KEEFE, Judges

CLINE, Judge: This is an application for review of the decision of the trial judge in *Nippon Trading Co.* v. *United States,* Reap. Dec. 5302, covering two appeals, Nos. 108142–A and 108143–A, which were consolidated for trial. This is the second time that the cases have been before this division. They were originally decided by the trial judge in Reap. Dec. 5022. On application for review of that decision, the judgment below was reversed by this division and the case was remanded to the trial judge with instructions to consider a report of Customs Agent Martin G. Scott which was admitted in evidence by the trial judge at the trial as exhibit 2 but was rejected in the decision of the case because the signature of the customs agent was not certified by the properly authorized authorities. Reap. Dec. 5173. Counsel for the importers waived the certification at the trial and made objection to the exhibit only on the ground that the statements therein are irrelevant. In the second decision of the trial judge, the one now up for review, exhibit 2 was weighed and judgment was rendered in favor of the plaintiff, holding that a buying commission of 10 per centum added on entry to meet advances of the appraiser in a test case was not a part of the export value of the merchandise.

An examination of the papers in the case shows that the entries were made at the unit invoice prices. The invoices cover a variety of articles. For instance, the invoice covered by reappraisement 108142–A covers decorated porcelain and earthenware, brooms, paper dusters, lacquered wooden bowls, fur slippers, silk pin cushions, wooden cabinets, bone charms and beads, lacquered photograph stands, incense burners, and cuff buttons. Certain charges are added at the bottom of the invoice, one of which is "buying commission 10% on ¥1,533.08—¥153.31." This commission was not computed on the total value of the invoice, which is ¥1,706.98. The commission and certain nondutiable charges were deducted on entry. The record contains also a copy of an application by the importer to amend the entry by adding the following:

| | |
|---|---|
| 10% buying commission | ¥81. 84 |
| On entire shipment add transportation charge | 6. 88 |
| | ¥88. 72 |

The numbers of the cases of merchandise on which the 10 per centum commission was added are enumerated on this application and they include only the cases containing the decorated porcelain and earthenware from Goshigaisha Imoto Shoten. This application to amend was accepted by the collector. We note that this 10 per centum buying commission which was added on entry includes only ¥ 81.84 of the commission ¥153.31 added on the invoice.

The same condition prevails with respect to the invoice covered by reappraisement 108143–A. The importer added on entry a commission of ¥25.39, amounting to 10 per centum of the decorated porcelain from Goshigaisha Imoto Shoten, instead of the commission of ¥63.76 added on the invoice and deducted on entry before the amendment.

The certificates filed under the authority of section 489 of the Tariff Act of 1922 attached to the invoice show that the sums ¥81.84 and ¥25.39 respectively were added on the entries to meet advances by the appraiser on entry 25640.

The merchandise was appraised at the entered values and the plaintiff below claims that the 10 per centum commission added on entry to meet the advances of the appraiser on the porcelain and earthenware from Goshigaisha Imoto Shoten is not a part of the value of the merchandise.

The record contains documentary evidence only. Exhibit 1 is an affidavit of Kojiro Kato, executed before the American vice consul on October 23, 1939. Exhibit 2 is a report of Customs Agent Martin G. Scott, dated at Kobe, Japan, on December 17, 1929. Exhibit 3 is another report of Customs Agent Martin G. Scott, dated at Kobe on March 18, 1930.

In exhibit 1 the affiant states that in November and December, 1929, he was employed by Nippon Boyeki Shokai of Nagoya, Japan, and that his duties with said firm consisted in part of purchasing various types of merchandise and of arranging the shipment thereof to the Nippon Trading Co., of San Francisco, which company is the importer herein; that during this time he purchased and shipped the following:

(2) 45 cases porcelain, earthenware, manufacture of paper, and manufacture of grass, etc., purchased from Goshigaisha Imoto Shoten and others, of Nagoya, Japan, as per order of Nippon Trading Co. accepted by Nippon Boyeki Shokai December 15, 1929, and forwarded per steamer Bordeaux Maru under American consular invoice 123, dated January 25, 1930 at Nagoya.

(3) 30 cases decorated chinaware and earthenware, purchased from Goshigaisha Imoto Shoten and others of Nagoya, Japan, as per order of Nippon Trading Co. accepted by Nippon Boyeki Shokai December 15, 1929, and forwarded per steamer Tatsuno Maru under American consular invoice 133, dated January 27, 1930 at Nagoya.

The exhibit contains also the following statement:

That in arranging for the purchase and shipment of above-described merchandise Nippon Boyeki Shokai acted only as agent of Nippon Trading Co., and the only things done by Nippon Boyeki Shokai in these transactions were the purchase and shipment of the articles. No process of manufacture or any similar work was performed or supervised by Nippon Boyeki Shokai, and the articles were shipped in exactly the same condition as when purchased.

An inspection of the papers shows that the merchandise in consular invoice 123 is covered by reappraisement 108142–A and that covered by consular invoice 133 is covered by reappraisement 108143–A.

Exhibit 2 is dated December 17, 1929, which is slightly over a month prior to the shipment of the goods in the cases herein involved. The report reads in part as follows:

Complaints having been received from the trade that Imoto & Company, Naygoya, were underselling porcelains in the United States, particularly in New York, an investigation has been made into the activities of this firm, and the following report thereon is herewith respectfully submitted:

The office of this firm is at Shumokucho, Higashi-ku, Nagoya. The file of Consular invoices, from August to date was secured from the Consulate at Nagoya for the purposes of this investigation. These invoices show the firm ships to—

Imoto Bros. Inc., 17 East 17th St., New York.
Nippon Trading Company, 420 Grant Avenue, San Francisco.
Nippon Importing Company, 218 South 18th St., Omaha, Nebr.

Of the above firms, Imoto Bros., New York, and the Nippon Trading Company, San Francisco, are affiliated with Imoto & Co., Nagoya. The firm operates in Japan under the name of Nippon Boyeki Shokai (Nippon Trading Company). All invoices are made out in Nagoya, though merchandise is bought in Kobe, Osaka, Kyoto and other producing districts.

The report states further:

December 10th, a visit was made to the office of Imoto & Co., (Nippon Boyeki Shokai), Shumokucho, Higashi-ku, Nagoya, their Mr. Tamesaburo Imoto, Partner, interviewed, and the following information secured, verified unless otherwise stated by the firm's books and records:

Imoto & Co., Nagoya, buy and ship to firms enumerated on page one of this report on a 10% commission basis. Their shipments may be divided into (1) Porcelains, and (2) other merchandise.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

PORCELAIN SHIPMENTS.

Porcelain shipments are invoiced on the same 10% buying commission basis. The firm's methods of purchasing these articles, however, is quite different: The firm buy the plain porcelain bodies,—tea sets, coffee sets, cups and saucers, plates, etc. These are bought (brought) to their plant at Nagoya and assembled and graded. The plain materials are then given out to other small dealers, or workers, to be decorated in accordance with Imoto's ideas or designs. The original seller of the plain material and the worker who does the decorating are entirely separate persons. An attempt was made to check the costs of these items, but the same proved impossible, inasmuch as it was impossible to identify the materials purchased with those used on the various orders.

For example, the firm buys a lot of cups and saucers—these are graded into 1st, 2nd and 3rd, or mixed with other purchases, until they lose their identity. Some designs require a good quality body, while others will cover over defects so that a cheaper body may be used.

On cups and saucers item 570/82, invoiced at 55 sen per dz., the cost was stated to be—

| | | |
|---|---|---|
| Cups & Saucers at 2 sen each | 24 | sen |
| Cost of decorating | 25 | " |
| Cost of carton | 2. 3 | " |
| | 51. 3 | sen |

This office could check the painting charge, but was unable to check the original cost of the cups and saucers. Cups and saucers were bought at 2 sen each, and also at over and below that figure. The records do not show which purchase of cups and saucers were used for any one particular order. The discrepancy between the 51.3 sen given as cost and the 55 sen invoiced, was explained as due to breakage during the process of decorating, and the necessity of throwing out badly decorated pieces. These losses are at Imoto Company's risk, and they allow for them accordingly. The breakage and rejection of inferior pieces amounts to from 5 to 10%, but the records offered no way of checking what the breakage or loss actually amounts to.

Exhibit 3 is a copy of a report of the same customs agent regarding a shipment of decorated porcelain ware shipped by Imoto & Co. (Nippon Boyeki Shokai) to Imoto Brothers, New York, reading in part as follows:

Reference is respectfully made to letter of February 5, 1930, re the above.

With regard to the two points raised by the appraiser, we would reply as follows:

(1) Unquestionably similar decorated porcelain is freely sold and offered for sale in the Nagoya market. Maruhi Shoten, Shofu Kogyo Co., Seiyei Goshi Kaisha, and others sell merchandise similar if not identical to that shipped by Imoto & Co. These firms sell to local firms for export, and also ship direct. None of them, however, charge buying commissions on their invoices (Shofu, it is noted, show a selling commission on their invoices). Such merchandise can be considered as being freely offered for sale. Owing to the fact that there are no standard designs or numbers for the different articles among the various suppliers, it would be an endless task to attempt to arrive at market values on all comparable merchandise. Imoto & Co. do not sell or offer merchandise for sale in the local market, hence there is no way of ascertaining what they would sell this merchandise for save from their invoices.

  *   *   *   *   *   *   *

(2) As regards earthenware articles, we have not found any of these items included in the articles partly manufactured or finished by Imoto & Co.

Counsel for the appellant argues in his brief that the evidence submitted by the appellee (the plaintiff below) is not sufficient to make out a *prima facie* case because all the essential points required for a valid appraisement have not been established, citing *United States* v. *T. D. Downing Co.*, 20 C. C. P. A. 251, T. D. 46057; *United States* v. *Malhame & Co.*, 19 C. C. P. A. 164, T. D. 45276; *M. Hashimoto et al.* v. *United States*, 69 Treas. Dec. 1431, R. D. 3818; *August F. Stauff*

*et al.* v. *United States,* 72 Treas. Dec. 1175, R. D. 4163; *Butler Bros.* v. *United States,* 73 Treas. Dec. 1478, R. D. 4277; *Scharf Bros. Co., Inc.* v. *United States,* 1 Cust. Ct. 572, R. D. 4365; *United States* v. *Spiritos Music School,* 2 Cust. Ct. 8v1, R. D. 4490; *Sanders Mfg. Co.* v. *United States,* 5 Cust. Ct. 585, R. D. 5044.

The merchandise covered by the appeals herein was imported while the Tariff Act of 1922 was in force. We note that the provisions of the Tariff Act of 1922 are not mentioned in the assignment of errors filed with the court. The appellant claims in assignments of errors 1, 2, and 5 that the trial court erred in finding and holding that the evidence establishes export value under section 402 (d) of the Tariff Act of 1930 or in not entering judgment holding that the export value of the merchandise, as defined in section 402 (d), is the entered and appraised value. We note that the trial court made the same error in the judgment order in which it is stated that the "export value, as that value is defined in section 402 (d) of the Tariff Act of 1930, is the proper basis for the determination of the value of the merchandise herein involved." In assignment of error number 3, it is claimed that the court below erred:

In finding and holding in effect that the importer has overcome the presumption of correctness of the appraiser's finding of value, and in not finding and holding to the contrary.

The appellee points out that there was no presumption of correctness attaching to the appraiser's finding under the Tariff Act of 1922, citing *Happel & McAvoy (Inc.)* v. *United States,* 16 Ct. Cust. Appls. 161, T. D. 42791.

In assignment of errors No. 6, it is claimed that the court below erred:

In not finding and holding the importer had failed to meet all essential elements. of proof.

This assignment of error raises the question argued by the appellant before the court even though assignments of errors 1, 2, and 5 should be held to be insufficient because the tariff provisions of the Tariff Act of 1930 were cited rather than the applicable provisions under the Tariff Act of 1922.

The chief point considered in the decision below was whether the item "10% buying commission" added by the importer on entry was a part of the value of the goods. The question of whether the importer had offered sufficient proof to enable the court to make a valid appraisement was not discussed. In some cases where the issue has been restricted to one point at the trial, this division has refused to consider other points raised in an application for review (*United States* v. *Globe Shipping Co., Inc.,* Reap. Dec. 4527) but here the issue was not restricted to one question at the trial. Counsel for each side offered

evidence.and the case was thereupon submitted without briefs or oral argument.

In the case of *United States* v. *Collin & Gissel (Ludwig Baer)*, 29 C. C. P. A. 96, C. A. D. 176, the court based its decision on points not raised or discussed in the court below. The court said:

It is always a matter of regret to us to be called upon to pass upon questions not presented to the trial court. This is particularly true in reappraisement proceedings, because of the statutory provision which confers upon the single judge and the appellate division of the Customs Court exclusive jurisdiction in finding facts.

Where, however, the questions newly presented to us have been questions of law only, it has been our practice to consider and determine them. *United States* v. *Massce & Co.*, etc., 21 C. C. P. A. (Customs) 54, T. D. 46379; *United States* v. *Briones & Co., Inc.*, 22 C. C. P. A. (Customs) 245, T. D. 47158; *United States* v. *Rodier, Inc.*, 23 C. C. P. A. (Customs) 336, T. D. 48196. For examples of cases in which we have declined to consider certain newly raised questions for reasons stated in the opinions, see *United States* v. *Freedman & Slater, Inc.*, 25 C. C. P. A. (Customs) 112, T. D. 49241; *United States* v. *Fisher,Scientific Co.*, 26 C. C. P. A. (Customs) 278, C. A. D. 27.

In view of the authority above cited, we are of opinion that it is the duty of the court to consider all of the questions raised by the assignment of errors.

A review of the record shows that there was no evidence submitted showing where the principal market for decorated china or earthenware was located in Japan, the usual wholesale quantity in which such merchandise was freely offered for sale or the price at which such merchandise was freely offered either for sale in Japan or for export. It is shown in exhibit 2 that similar merchandise was sold in Japan by other dealers. This exhibit is dated slightly more than a month prior to the shipments in this case and is some evidence relating to the usual course of trade. If similar merchandise was sold in Japan, it is obvious that there was a foreign value for those goods and the finding of the trial judge that the export value of the merchandise is the proper basis of appraisement is unsupported by the evidence because there is no testimony tending to show that the foreign value of similar merchandise was not higher than the invoice values which the importer claims are the export values. The burden is on the importer in each case to establish all elements necessary for a valid appraisement. *Meadows, Wye & Co. (Inc.) et al.* v. *United States*, 17 C. C. P. A. (Customs) 36, T. D. 43324.

Exhibit 2 throws some light on the practice of the shipper of the merchandise in this case. It is stated in that exhibit that Imoto & Co. operate under the name of Nippon Boyeki Shokai in Japan and that Imoto & Co. buy plain porcelain ware in Japan and have it decorated with their own patterns by other firms before shipping the finished product to the United States. Such practice would make Imoto & Co. a manufacturer of the finished goods. It is obvious that

a manufacturer would not be entitled to deduct a commission it received in purchasing the raw materials that were used in the process of manufacture.

As to the decorated earthenware, it appears from exhibit 3 that Imoto & Co. (which is the same firm as Nippon Boyeki Shokai, the shipper in this case) buy such merchandise in the home market and ship it to the United States without further manipulation. If it was shown that they invoice it to the United States at the same prices at which it was bought and sold in the principal markets of Japan in the ordinary course of trade in the usual wholesale quantities, the commission would be nondutiable but the evidence fails to establish the value at which it was freely offered for sale in Japan either for home consumption or for export to the United States. The merchandise was appraised at the entered value. There appears to be nothing on the invoices to indicate whether it was appraised on the basis of foreign value or export value but the importer has the burden of showing that both the home value and the export value are lower than the appraised value, *Gump Co. (Inc.)* v. *United States*, 15 Ct. Cust. Appls. 114, T. D. 42189.

We find that the weight of evidence is not sufficient to establish all elements necessary for a valid appraisement. Under such circumstances, the appeals should be dismissed thereby reinstating the values found by the appraiser.

The judgment below is reversed and the cases are remanded to the trial judge with instructions to dismiss the appeals.