STERNFELD v. UNITED STATES (No. 2304).[1]

PARAGRAPH C, SECTION 402, TARIFF ACT OF 1922—"EXPORT VALUE"—EXPORT TAX.

The "export value" in paragraph C, section 402, tariff act of 1922, does not include an export tax levied by the Chinese Government at the time the merchandise left China. Unless the export tax is a part of the market value in the foreign country, it can not be considered as a part of export value.

United States Court of Customs Appeals, March 3, 1924.

APPEAL from Board of United States General Appraisers, Reappraisement Circular 33689.

[Reversed.]

*Brooks & Brooks* (*Frederick W. Brooks, jr.*, and *W. P. Harrigan* of counsel) for appellant.

*William W. Hoppin*, Assistant Attorney General (*Pelham St. George Bissell*, special attorney, of counsel), for the United States.

[Oral argument February 13, 1924, by Mr. Frederick W. Brooks, jr., and Mr. Bissell.]

Before MARTIN, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges.

HATFIELD, Judge, delivered the opinion of the court:

This in an appeal from the judgments of the Board of General Appraisers affirming the findings of value of the general appraiser in the matter of reappraisements 11529–A and 11620–A.

The questions involved were. submitted to the general appraiser, and on appeal to the Board of General Appraisers on the following stipulation:

The dutiable value of the merchandise covered by the above-entitled reappraisements is the export value thereof as defined in paragraph C of section 402, tariff act of 1922.

The addition made by the appraiser to the entered value in each of these reappraisements equals the amount of an export tax assessed by the Government of China upon the merchandise in question when exported from China.

The value as entered by the importer equals the export value of the merchandise in question at the time of its exportation to the United States not including the said export tax assessed by the Government of China upon the exportation of the said merchandise from China.

The pertinent part of paragraph C of section 402 of the tariff act of 1922, referred to in the above stipulation, reads as follows:

SEC. 402 (par. C). The export value of imported merchandise shall be the market value or the price, at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States. * * *

---

[1] T. D. 40065.

The general appraiser, and on appeal the Board of General Appraisers, held that the export tax referred to in the stipulation was a part of the export value of the merchandise, as the same is defined in paragraph C, supra, for the reason, as stated in the opinion, that "without the payment of which tax the purchaser could not secure the merchandise * * * and * * * the wholesale price paid by the purchaser on the exportation of the merchandise to the United States included the tax * * *."

We do not believe that the facts as stipulated warrant the conclusion that the purchaser could not secure the goods until he had paid the export tax; nor that the wholesale price included the tax; nor that the market value or the price of the merchandise at the time of exportation of the same to the United States included the export tax. We think that proper interpretation of the stipulation warrants the conclusion that an export tax was assessed by the Government of China upon the merchandise in question *at the time when* the same was exported from China, and that the tax did not accrue until that time had arrived, which is not, we think, the equivalent of saying that the export tax was included in the export value as defined in paragraph C, supra.

The Government contends that the export tax is necessarily a part of export value, for the reason as stated, that "export taxes are part of the value that every exporter must pay, no matter where his goods are located in the country of exportation." No doubt a definition of export value might be so formulated as to require the inclusion of all items of cost as well as an export tax, regardless of when the same might accrue, but we are required to accept the definition of export value as declared by Congress in paragraph C, supra. We think that the language in that paragraph is not capable of · the construction placed upon it by the Government, but that only the aggregate items of cost specifically set forth in the statute, or included in the market value or price for exportation to the United States, may properly be included in export value.

An export tax can not be added to market value to make export value, but in order to be a part of export value it must be included in market value. Export value is declared in paragraph C, supra, to be market value, as defined therein. Therefore, if it is proper to add an export tax to market value as defined, in order to make export value, it would follow that it is proper to add an export tax to market value in order to make market value, which is reductio ad absurdum.

However, if an export tax is an element of value in determining the market value or price, if it is a part thereof, it would properly be considered a part of export value as defined. In this case the export tax was not an element to be considered in determining

market value, nor was it a part thereof, for the reason that, as we construe the stipulation, the tax did not accrue when the manufacturers sold such or similar merchandise, but did accrue only in case the merchandise was exported and at the time when it was exported. Therefore, the wholesale price of such or similar merchandise did not include the export tax. If the wholesale price of such or similar merchandise did not include the tax and if the purchasers of such merchandise "in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States," did not pay a price sufficient to cover the tax, the market value did not include it, even though the tax was paid by the purchasers upon exportation of the merchandise. And the tax not being included in the market value or price, it follows that the export value did not include it, and accordingly the entered value of the merchandise equaled the export value thereof. The dutiable value of the merchandise is the export value thereof; therefore the act of the appraiser in adding the export tax to the entered value to make dutiable value is contrary to the statutory provisions.

Congress certainly did not intend that an export tax should be added to market value to make export value, because language appropriate to such an intention is entirely omitted from the paragraph under discussion; whereas in section 302 of the emergency tariff act of 1921, the legislative intent that an export tax should be added to market value, when it was not included therein, to make export value, clearly appeared by appropriate expression.

The pertinent part of section 302 reads as follows:

SEC. 302. * * * and plus, *if not included in such price*, the amount of any export tax imposed by the country of exportation on merchandise exported to the United States. [Italics ours.]

It should be noted that by the language "if not included in such price" Congress clearly indicated with approval its recognition of the possibility of an export tax being included in some instances in the market value of merchandise. There is no language in the tariff act of 1922 to give expression to a contrary legislative purpose.

And that Congress recognized at that time that such a tax would not always be included in the market value of merchandise and therefore not always included in the export value thereof unless specifically included in the statutory definition is established by the enactment of section 302, supra, providing for the inclusion of export taxes in the definition thereof.

Therefore, Congress having repealed section 302 of the emergency tariff act of 1921, and having failed to reenact the language of section 302, supra, and not having used language appropriate in the

tariff act of 1922 to indicate legislative intent and purpose, that an export tax, when imposed, should be added to market value in order to make export value, it follows that unless the export tax is a part of market value it can not be considered as a part of export value.

In the case of the United States *v.* Passavant (169 U. S. 16) the Supreme Court had under consideration the question of whether a tax imposed by the German Government on merchandise, when it was sold by the manufacturer, was a part of export value. The court held that the tax accrued at the time of the sale by the manufacturer and was a part of the wholesale price; that it was included in market value and accordingly was an element to be considered in determining export value.

The fact that the tax was remitted by the German Government and not paid on the goods when the same were exported was held to be of no consequence, because the tax had accrued in time to be and was a part of the market value of the merchandise. It will be noted that, while the remission of the tax reduced the cost of the goods to the purchaser, it did not reduce the *market value* of the goods.

In re Rheinstrom, T. D. 20761 (G. A. 4368), which is referred to in the Government's brief, the Board of Appraisers had under consideration the question of whether a general revenue tax and certain special taxes were a part of export value. In that case, upon the authority of United States *v.* Passavant, supra, the board held that the general revenue tax, being assessed by the Government of France upon all alcohol consumed in France, was a proper part of the market value of the merchandise. However, the board held that the special and local taxes imposed upon the merchandise by the city of Bordeaux were not proper elements to be considered in ascertaining the dutiable value of the merchandise because the special taxes were not a part of the market value of the merchandise in the principal markets of France.

In the case of J. D. Nordlinger, T. D. 18950 (G. A. 4075), the Board of General Appraisers squarely held, upon the authority of United States *v.* Passavant, supra, that an export tax levied by the Chinese officials on all exported firecrackers, and at the time of their exportation, was not a part of market value, and therefore not a part of dutiable value.

We think that the cases above referred to support the views and the conclusions as hereinbefore expressed.

The judgments of the Board of General Appraisers are *reversed.*