UNITED STATES *v.* TADROSS & CO. ET AL. (No. 2692)[1]

1. REAPPRAISEMENT DE NOVO.

The trial by a general appraiser of an appeal to reappraisement (sec. 501, Tariff Act of 1922) is *de novo. Johnson Co.* v. *United States,* 13 Ct. Cust. Appls. 373; T. D. 41318. No presumption aids the first appraisement.

2. APPRAISEMENT—EXPORT TAX.

"An export tax can not be added to market value to make export value, but in order to be a part of export value it must be included in market value." *Sternfeld* v. *United States,* 12 Ct. Cust. Appls. 172. Where rugs from' China and from 'Persia were taxed at exportation, and were not assessed with such tax unless exported, the tax was not properly part of the appraised value. Sec. 402, Tariff Act of 1922.

3. REAPPRAISEMENT REVIEW—MEASURE OF PROOF.

The judgment of the Board of United States General Appraisers on a reappraisement review will be affirmed if there is any substantial evidence to support it.

United States Court of Customs Appeals, April 17, 1926

APPEAL from Board of United States General Appraisers, Circ. Reapp. 36003

[Affirmed.]

*Charles D. Lawrence,* Assistant Attorney General (*Oscar Igstaedter* and *Ralph Folks,* special attorneys, of counsel), for the United States.

*Brooks & Brooks* (*Frederick W. Brooks, jr.,* of counsel), for appellees.

---

[1] T. D. 41528.

[Oral argument March 17, 1926, by Mr. Igstaedter and Mr. Brooks, jr.]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:

The goods involved in this appeal are five importations of Chinese and two of Persian rugs, made by N. Tadross & Co. and George Kazan (Inc.).

The Chinese rugs were purchased and imported in the following manner: The importer, being desirous of purchasing some of these rugs, authorized Hatch Carter & Co., of Tientsin, China, through their New York representatives, Pattison, Wheeler & Slade, to purchase the same for them, and as their agents. At the same time the importer furnished Hatch Carter & Co. a letter of credit sufficient to cover all purchases. Hatch Carter & Co. then went into the Chinese market and purchased the desired rugs at their market price and at the principal market for the same, which the testimony shows to have been Tientsin. The market price paid for the rugs was at a certain rate per square foot and included no expenses of any kind other than the price of the rug. Hatch Carter & Co. then paid the other expenses incident to packing and shipping, forwarded the goods to the importer and drew against the letter of credit for the total expense. Included in the items of expense were commissions, which the testimony shows were computed on the purchase price alone, and an export tax, which the testimony shows is imposed only when such goods are exported and is not imposed on goods remaining within China.

The Persian rugs were purchased and imported in a similar way. It is shown, however, there was no export tax imposed except upon such rugs as were dyed with aniline dyes. When a shipment of these rugs passed the customs at Hamadan, in Persia, the rugs were examined by the Persian customs officers and a penalty or additional duty of 12 per centum was imposed upon such rugs as were found to be aniline dyed. These and other charges and expenses were paid by the purchasing agents and included with the purchase price in their draft upon the importer. No aniline tax is imposed upon goods not exported. The importer entered his goods, in each case, at the purchase price.

The appraiser, in finding dutiable value, included the Chinese export tax and the Persian aniline penalty as a part thereof, in the importations to which they respectively apply.

On appeal to a single general appraiser, the entered values were sustained and on application for review by the Board of General Appraisers the judgment of the single general appraiser was affirmed. From that judgment the Government appeals to this court.

But one question of law is here involved, namely: Should the Chinese export tax and the Persian aniline tax be included in ascertaining the dutiable value of the imported goods?

The Government argues that the valuation fixed by the local appraiser was presumptively correct; that the burden was imposed by law upon the importer to establish both the export and foreign values of the merchandise; that he failed to establish the export value; and that, therefore, the valuation fixed by the local appraiser should prevail and it was error to set it aside.

When the importer appealed from the valuation fixed by the local appraiser, to a single general appraiser, and a hearing was had thereon, that proceeding was *de novo*. *Johnson Co.* v. *United States*, 13 Ct. Cust. Appls. 373, T. D. 41318. Therefore, the matter at issue must be determined from the record as made before the single general appraiser and not from any legal presumption of correctness to be attached to the appraiser's valuation.

Several witnesses were called by the importers and testified on the hearing before the single general appraiser and their testimony appears in the record. A written communication from the United States consul at Teheran, Persia, as to the Persian aniline tax also there appears. From this evidence the facts are established as heretofore stated by us in this opinion. It must be apparent, from a consideration of the record, that the price paid for the goods in question was the price at which such merchandise was freely offered for sale to all purchasers, in the principal markets of the countries from which the same was exported and in the usual wholesale quantities at the time of exportation, and in the usual course of trade, for any purpose, either of home consumption or export, and that such price did not include the export or aniline tax. While the testimony may not be so definite and clear as might be desired, there is, nevertheless, some substantial evidence in support of the finding of the court below on this point, and in such cases, as a matter of law, it must be affirmed. *Johnson Co.* v. *United States, supra; Metz & Co.* v. *United States*, 13 Ct. Cust. Appls. 412, T. D. 41340.

As the export and aniline taxes constituted no part of the purchase price and were imposed upon and paid by the purchasers, the case comes squarely within the rule announced in *Sternfeld* v. *United States*, 12 Ct. Cust. Appls. 172. There the tax imposed was an export tax, forming no part of what was stipulated to be, aside from the tax, the export value. The court said:

An export tax can not be added to market value to make export value, but in order to be a part of export value it must be included in market value.

Any element supplied in that case by the stipulation is, in our judgment, supplied by the evidence in the record here.

The Government cites *Rogers & Gallet* v. *United States*, 12 Ct. Cust. Appls. 201, and *United States* v. *Passavant*, 169 U. S. 16, which, it is contended, lead to a different conclusion. We do not so understand these cases. The *Roger & Gallet* case was decided upon the provisions of the tariff act of October 3, 1913. In fixing the actual market value of the merchandise imported in that case, it was found an internal-revenue tax upon its alcoholic content was imposed when the goods were sold for home consumption and in such cases was added to the purchase price. In the *Passavant* case, the goods were entered under the tariff act of October 1, 1890. Under that act, it was necessary to ascertain the actual market value or wholesale price of the imported merchandise. It was found a sales tax was imposed when the goods were sold for home consumption and when sold, constituted a part of the purchase price, which tax might be remitted if the goods were exported. It will be observed that in both cases cited, the tax actually formed a part of the purchase price which the buyer paid when he received his goods in the foreign market. Therein is found the essential difference between the cases cited and the case at bar. Here, the tax constituted no part of the market value of the imported goods, for any purpose.

There is no error in the record and the judgment of the court below is *affirmed*.