(Reap. Dec. 8307)

DUNLAP, ALPERS & MOTT ET AL. *v.* UNITED STATES

Entry No. 752294, etc.

(Decided April 14, 1954)

*John D. Rode* for the plaintiffs.

*Warren E. Burger*, Assistant Attorney General (*Daniel I. Auster, Samuel D. Spector, Chauncey E. Wilowski*, and *Henry J. O'Neill*, trial attorneys), for the defendant.

MOLLISON, Judge: The merchandise involved in these appeals for reappraisement consists of certain cigars exported from Cuba during the months of April, May, and June 1946. The cigars were invoiced and entered at various unit prices, plus packing, and were appraised at the same unit prices, net, plus 2.2 per centum Cuban sales tax, plus case packing, on the basis of foreign value.

There is no dispute between the parties as to the *per se* values of the cigars or the cost of packing. The sole claim of the plaintiffs is that the Cuban sales tax of 2.2 per centum forms no part of the dutiable value of the cigars in question; that the percentage addition or advance of 2.2 per centum made by the appraiser to cover the item of the Cuban sales tax was erroneous and illegal because, as claimed by the plaintiffs, the Cuban sales tax was not a part of the market value or price at which cigars such as or similar to those here

involved were freely offered for sale or sold for home consumption in Cuba. There is no dispute that the said sales tax did not apply to transactions for export.

In these appeals, the plaintiffs have challenged only the percentage addition or advance of 2.2 per centum added by the appraiser to cover the Cuban sales tax and no other item of the appraisement, and, as a consequence, the presumption of correctness as to all other items or elements of the appraisement is not destroyed and, therefore, they stand as presumptively correct. See *United States* v. *Schroeder & Tremayne, Inc.*, and *James H. Rhodes & Co.*, 41 C. C. P. A. (Customs) 243, C. A. D. 558, decided March 23, 1954, and cases therein cited.

No oral testimony was offered by either of the parties, and the case was submitted for decision upon various affidavits and Treasury agents' reports, including among them English translations of various decrees of the President of the Republic of Cuba and official regulations promulgated with respect to the taxes upon the sale, exchange, or assignment of merchandise in Cuba. Neither party has challenged the authenticity of any of the English translations offered in the case.

There does not appear to be any dispute as to the background of the matter, which is as follows: Certain taxes imposed by the Cuban Government upon mercantile products, involving, among other things, cigars, were pledged by Cuban law to the service of a debt known as the Thirty-Five Million Loan. Prior to 1946, the domestic aspect of these taxes was in the form of a tax imposed at the time the commodity was sold to the public, and, with respect to cigars, amounted to 1 per centum of the retailer's price.

Under laws of 1931 and 1943, the Executive Power of Cuba was authorized to transfer the collection of certain taxes, among them the Thirty-Five Million Loan taxes, from the retailer-consumer stage "to the moment in which the first sale thereof is effected by manufacturers and producers, in the case of goods made, processed or grown in Cuba," and was further authorized to increase the amount of the said tax up to 10 per centum.

Under date of March 27, 1946, a Presidential Decree No. 643 of that year, was issued, to be effective April 1, 1946. The said decree, by its terms, fixed the rate of tax on articles subject to the special Thirty-Five Million Loan taxes at 2.75 per centum (Article VII, II (b)) to be computed upon:

* * * the value of the merchandise when the sale, exchange or assignment thereof is accomplished by the producer, after deducting twenty per cent (20%), this deduction having been estimated to cover the taxes and expenses accruing on domestic goods, which do not encumber imported commodities, in order that the latter as well as the former shall be equally taxed. [Article IV.]

Under the foregoing, the net rate of tax imposed amounted to 2.2 per centum.

It was likewise provided that "the producer * * * shall bill the retailer separately from the selling price, for the amount of the tax" (Article VII; II (b)), and that "The tax shall be paid by the producer at the Tax and Revenue Office of his domicile, within the first twenty-five days of the month following that in which the sale, exchange or assignment of the goods may be accomplished."  (Article IV.)

By the terms of Article VI (c) of Decree No. 643, the sale, exchange, or assignment—

* * * of products which are partially or wholly manufactured or processed for exportation, provided such exportation is directly done by the producer thereof * * *

were exempted from the tax.

In the brief filed in their behalf, counsel for the plaintiffs points out that, prior to the promulgation of Decree No. 643, the tax levied on the sale of cigars in Cuba was unquestionably a retail sales tax, levied on sales by retailers to consumers.  Such sales, presumably, were not in the usual wholesale quantities contemplated by the valuation provisions of the tariff act, and it would appear that the market value or price which formed the basis for the customs valuation of imported Cuban cigars at that time was the market value or price which obtained at the level of sales from manufacturer to retailer in Cuba.  As no tax was imposed at that level, there was no question of its forming part of the value for tariff purposes.

In essence, it is the position of the plaintiffs that it was the purpose and effect of Decree No. 643 *not* to change the *nature* of the tax— that is to say, its incidence or imposition—but merely to change the method of *collection*.  It is urged that under Decree No. 643 the tax was *imposed* as theretofore, at the retail level, but was *collected* at a higher level, i. e., the manufacturer's level.

As supporting this position, counsel for the plaintiffs points to various provisions of Decree No. 643, and the statements, given in the form of affidavits, by various persons of lay and legal background said to be familiar with the laws and regulations of Cuba relating to the purchase and sale of cigars both for home consumption in Cuba and for exportation.

It is the defendant's position that not only did the plaintiffs fail to make out a *prima facie* case in support of their contention, but that the evidence affirmatively establishes that under Decree No. 643 the tax accrued upon the sale for home consumption by the manufacturer, and under the circumstances of this case was part of the value for tariff purposes.

Decree No. 643 is a document consisting of three parts: (1) A preamble of 12 unnumbered paragraphs of recitals explaining the purpose and the factual and jurisdictional background of the action which is to be taken; (2) a "resolution" consisting of 17 numbered "articles"

setting forth the action taken by the Executive by means of the decree, which action presumably has the force and effect of law; and (3) 8 numbered temporary provisions, obviously designed to bridge the change between the tax system as it existed prior to the promulgation of the decree and that which was set up under the decree.

Neither party has produced any textual material exhibiting the Cuban law with respect to the so-called "loan taxes" with which we are here especially concerned, as it existed prior to the promulgation of Decree No. 643. While it appears that such taxes were pledged to the service of the Thirty-Five Million Loan, it does not appear whether they were required to be in the form of sales taxes, and, if so, whether they were bound to be imposed upon sales at any particular level.

From a reading of the preamble of Decree No. 643, however, it appears that whatever the nature of such taxes, prior to the promulgation of the decree, the Executive Power of Cuba was authorized by Cuban law in 1943 to *transfer* the *collection* of such loan taxes to "the moment in which the first sale thereof is effected by manufacturers."

Moreover, recognizing that as any commodity is sold through various levels from its origin to its ultimate consumption its price increases, and that a tax imposed upon a commodity at the ultimate, or consumers', level would bring a greater return than a tax *at the same rate* would bring on the same commodity, if imposed at a level nearer its origin, the Executive was further authorized to increase the rate of tax, presumably in order to secure the same return from a tax at the level of manufacturers' sales that was obtained at the level of sales to consumers.

In putting into effect the purposes set forth in the preamble, the Executive decreed in Article IV of the resolution that—

This tax shall apply * * * to the sale, exchange or assignment of such merchandise as may be produced in Cuba, * * *,

thus establishing the nature of the tax under the decree as a tax upon the acts of sale, exchange, or assignment of merchandise.

In the sentence immediately following, it is decreed that the tax—

* * * shall be computed on the value of the merchandise when the sale, exchange or assignment thereof is accomplished by the producer, * * *,

thus establishing the valuation basis for the assessment of the tax.

The last sentence of the said article provides that—

* * * The tax shall be paid by the producer at the Tax and Revenue Office of his domicile, within the first twenty-five days of the month following that in which the sale, exchange or assignment of the goods may be accomplished.

This last requirement would seem to make the producer or manufacturer the taxpayer, and this seems to be the import of regulations subsequently issued by Presidential Decree No. 3212 of September

22, 1947, amending Decree No. 643 (defendant's exhibit 9). Article 3 of Decree No. 3212 provides, so far as pertinent, as follows:

Article 3. The following are bound to pay this tax in the amounts indicated, to wit:

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

2. On the sale, exchange or assignment:

Such natural or artificial persons owning industries established in the national territory, as may sell, exchange or assign the merchandise by them produced, manufactured, obtained or distributed.

However, it appears from evidence in the form of affidavits of persons said to be familiar with Cuban law with reference to the sales tax, that subsequent interpretation by officials of the Cuban Government charged with the administration of the sales tax law and by Presidential Decree No. 5122 of 1949, the role of the manufacturer in the matter of the tax was held to be that of a "withholder," and that he was not required to pay the tax to the Government of Cuba until after collection of the same from the retailer. (Defendant's collective exhibit 15; plaintiffs' exhibit 12.)

It becomes apparent that a decision in this case must rest upon a determination of the time when the sales tax accrued in the case of sales for home consumption in Cuba. If the tax accrued at the time the goods were sold, under the construction of value laid down in *United States* v. *Frederick S. Passavant et al.,* 169 U. S. 16; 42 L. ed. 644, it was part of the value of the goods when sold in the foreign market. A succinct statement of the Supreme Court's holding in that case is contained in the following paragraph:

The certificate of facts states that the German duty is imposed on merchandise when "sold by the manufacturers thereof for consumption or sale in the markets of Germany;" and "is collected when the finished product goes into consumption in Germany." As the tax accrues when the manufacturer sells, his wholesale price includes it, and the purchaser who buys these cotton velvets in wholesale quantities in the German markets pays a price covering the tax, and that is the price for the merchandise when bought and sold in those markets.

On the other hand, if the tax did not accrue at the time the goods were sold, and particularly if it accrued as the result of some other incident or transaction subsequent to the sale of the goods, then it would not be part of the value of the goods when sold in the foreign market. *United States* v. *Tadross & Co. et al.,* 14 Ct. Cust. Appls. 10, T. D. 41528 (tax accruing only if the goods were actually exported), and *United States* v. *F. S. Allenby & Co. et al.,* 20 C. C. P. A. (Customs) 80, T. D. 45703 (tax accruing only in event merchandise was subsequently sold at retail).

The determination of the question in this case depends upon the interpretation of the statutes and laws of a foreign country, and it is well established that such interpretation should be governed by the decisions of the courts of that country. 50 Am. Jur. pp. 316–7, sec.

324; *Shaw* v. *Goebel Brewing Co.*, 202 F. 408, 45 L. R. A. (N. S.) 1090.

However, there is evidence offered by both plaintiffs and defendant to the effect that exhaustive search by members of the Cuban bar has failed to reveal any decision by the Cuban courts regarding the nature and effects of the sales tax here involved.

As hereinbefore indicated, plaintiffs have offered evidence in affidavit form of various persons, both laymen and lawyers, who state that they are familiar with the provisions and operation of the Cuban law with respect to the tax here involved. Under the circumstances this is a proper type of evidence to be offered. 20 Am. Jur. pp. 674–5.

Examination of the affidavits with the question of the time of accrual of the tax in mind reveals some rather conflicting statements on the point.

In plaintiff's collective exhibit 1, the affidavit of Atanasio C. Rivero, an officer and director of one of the exporting firms involved herein, the affiant states that by Presidential Decree No. 643—

\* \* \* the tax became payable at the time of purchase by the retailer and not upon being sold to the public as theretofore.

In plaintiffs' exhibit 2, the affidavit of Fernando Palicio, an officer and director of another of the exporting firms involved herein, the affiant states that—

\* \* \* said tax is not applicable until after the sale has been consummated and delivery made.

Plaintiffs' exhibit 3, the affidavit of Rafael Cifuentes, one of the owners of the third exporting firm involved herein, and plaintiffs' collective exhibit 4, the affidavit of Augusto Delgadillo Leiva, president of the Union of Manufacturers of Cigars of Cuba, do not contain any statements which could be considered to indicate the time of accrual of the tax.

In plaintiffs' exhibit 12, the affidavit of Dr. Julio A. Garcia-Sevilla, an attorney at law, licensed and admitted to practice before the courts of Cuba, the affiant states that Presidential Decree No. 643 provided—

\* \* \* that the tax was to be paid at the time of purchase by the retailer and not upon being sold by the retailer to the public as heretofore; \* \* \* that \* \* \* the decree provided that the producer should collect the tax from the retailer at the time of the purchase by the retailer; that the manufacturer, or producer is not liable for the tax until and when a sale has been made to a retailer; \* \* \* that said tax does not accrue until after a sale to a retailer has been accomplished; that the tax is collected separate and apart from the invoice price of the Cigars; that the tax does not have to be turned over to the government by the producer until long after an actual sale to and collection from a retailer has occurred; that until and unless a sale is concluded there is no liability on the part of the manufacturer or producer for said tax and that at the time of offer, and prior to actual sales, the tax forms no part of the price at which such Cigars are freely offered for sale to all purchasers.

In plaintiffs' exhibit 13, the affidavit of Richard Moran y Castro, an attorney at law, licensed and admitted to the bar in the Republic of Cuba, the affiant states that—

* * * when due, the tax on cigars and tobacco products accrues at the time a sale is effected by the manufacturer, the amount of the tax not being included in the price at which the products are offered, nor in the invoice price.

It is apparent from the foregoing that the distinction in meaning between the time of accrual of a tax, i. e., the time when the liability arises, and the time of payment of a tax, i. e., the time when payment under the liability is required, was not always carefully maintained by the affiants. Nevertheless, the picture that emerges from the entire mass of evidence offered by the parties is as follows: (1) That the price quoted by the manufacturers for home consumption sales of cigars did not include the amount of the tax; (2) that, nevertheless, cigars could not actually be bought for home consumption at the manufacturers' level in the ordinary course of trade without liability for the tax arising; (3) that such liability arose at the time of sale; (4) that payment of the tax could be deferred until collection of the amount due under the sale; (5) that the manufacturer was responsible for collecting the tax from the retailer; and (6) that the retailer was required to pay the tax to the manufacturer.

Of the foregoing picture, the determinative factor in connection with the tariff status of the tax is the salient fact that no sale at the manufacturers' level in the ordinary course of trade could be effected without liability for the tax arising thereon. It seems clear that the tax was a charge upon the transaction, and even though payment of the charge could be deferred in point of time, the liability for the payment accrued at the time of sale and was a necessary and unavoidable concomitant thereof. It is, therefore, immaterial which of the two parties to the transaction was primarily liable for the payment of the tax—the fact is that the cigars could not be purchased without liability for the payment of the tax arising. Whether expressed or implied in the offer of sale, it was nonetheless present.

Much is made by counsel for the plaintiffs in the brief filed in their behalf of the fact that in Article VII, II (b), of Decree No. 643 it is provided that in the case of articles subject to the special Thirty-Five Million Loan tax, "the producer * * * shall bill the retailer separately from the selling price, for the amount of the tax." It is contended that this is an indication that the tax is not part of the selling price.

In *Hugo Reisinger (Inc.) et al.* v. *United States*, 20 C. C. P. A. (Customs) 67, T. D. 45683, in a sales tax situation very similar to that in the case before us, our appellate court said:

The fact that the tax was required to be separately listed upon the invoice from the tax debtor to the purchaser does not change the law as to its being a tax.

See also *United States* v. *Wm. S. Pitcairn Corp.*, *infra*, wherein the court said:

* * * It is sufficient to say that * * * it is immaterial that the tax is added as a separate item on the invoice, as in the instant case.

Agreeably to the foregoing holdings, it appears to the writer that whether an item of tax is included in an offered or selling price or is required to be separately stated or invoiced is no indication at all of its character as dutiable or nondutiable under the valuation statute. If the tax accrues when the merchandise is sold, it is part of the selling price for tariff purposes (*United States* v. *Passavant, supra*), and this must be so whether the tax is included in the selling price or separately stated, or even if not stated at all but nevertheless actually accrues on the sale. It is the *fact* of the accrual of the tax, not the form in which it is presented or related to the selling price which determines its status from a tariff valuation standpoint.

With respect to the argument that Presidential Decree No. 643 did not change the nature of the tax itself but merely changed the method of collection, it certainly appears from all the evidence that whatever the intention of the legislative and executive powers of Cuba may have been, the effect of the acts was to charge sales at the manufacturers' level with liability for the tax and to relieve sales at the retailers' level from the same. No provisions for reimbursement, remission, or refund of tax have been shown to exist to cover cases where loss or casualty occurred to the cigars after liability to tax accrued but prior to sale at the retail level. It would seem that if it had been intended to keep the levy at the retail level, although to collect it at the higher level, some such provision would have been made.

It is argued on behalf of the plaintiffs that the evidence shows that the tax only applies on sales to retailers and does not apply on sales to other purchasers. No statement embodying the foregoing appears in Decree No. 643 itself, which taxes the "sale, exchange or assignment of such merchandise as may be produced in Cuba" and never uses the word "retailer" in connection therewith, nor does said decree limit its application to transactions in which retailers are parties. Nevertheless, in certain of the affidavits offered by plaintiffs, viz, exhibits 1, 2, 3, and 4, it is stated that the "said tax only applies on sales to retailers."

It nowhere appears in the said affidavits that in the ordinary course of trade in Cuba there are any purchasers other than retailers. In defendant's collective exhibit 11, being a report of a Treasury representative of an investigation made at the office of one of the exporters of the merchandise herein, it is stated under the caption "Class or Classes of Purchasers," that, according to statements of Mr. Atanasio

Rivero, an officer and director of the said firm, and the affiant in plaintiffs' collective exhibit 1—

* * * sales of cigars are made direct to retailers; however, some few sales are made as an accommodation to friends at the retail price.

Since sales are made direct to retailers, it would appear that there was no middle or distributor class of purchasers in Cuba, and as the only other class of purchasers mentioned are friends of the manufacturers who pay a retail price and sales to whom are made as an accommodation, such sales would not appear to be in the ordinary course of trade.

Counsel for the plaintiffs in the brief filed in their behalf has sought to draw a parallel between the situation in connection with the Cuban sales tax and that which obtained in connection with the British purchase tax which was the subject of decision in *United States* v. *Wm. S. Pitcairn Corp.*, 33 C. C. P. A. (Customs) 183, C. A. D. 334. The distinction between the facts involved in that case and those in the *Passavant* case, which the writer believes is here controlling, was stated by the appellate court in the *Pitcairn* case as follows:

The difference between the facts in the *Passavant* case and those in the case at bar is that in that case the tax accrued when the manufacturer sold, that is, when the merchandise was introduced into the open market, and was always a part of the actual market value and was included in the price at which the merchandise was sold to all purchasers for home consumption, whereas, in the instant case, the tax does not accrue when the merchandise is sold by registered manufacturers to registered wholesalers or by registered wholesalers or dealers to other registered wholesalers or dealers, but accrues only when the merchandise is sold to unregistered dealers or to the consuming public.

The facts in this case are basically akin to those in the *Passavant* case in that the tax was applied to all sales at the manufacturers' level. No provisions for deferring the *accrual* of the tax, such as were present in the *Pitcairn* case, are shown to exist with respect to the Cuban sales tax, and the holding in the *Pitcairn* case is not applicable to the case at the bar.

From all of the foregoing, it appears that the price at which cigars such as or similar to those here in issue were freely offered for sale to all purchasers for home consumption in Cuba was higher than the price at which such or similar cigars were freely offered for sale to all purchasers for exportation to the United States by the amount of Cuban sales tax, as found by the appraiser herein. In such situation, section 402 (a) (1) applies, and the higher of the two values must be taken as the value of the merchandise.

Upon all the evidence before me, I find as facts:

(1)   That the merchandise herein consists of cigars exported from Cuba in April, May, and June 1946.

(2)   That at the time of exportation of said cigars Havana was one of the principal markets in Cuba for the sale of such or similar cigars

both for home consumption in Cuba and for exportation to the United States.

(3) That at the time of exportation of said cigars, the Cuban sales tax of 2.2 per centum accrued when the manufacturer sold cigars such as or similar to those here involved for home consumption in Cuba.

(4) That at the time of exportation of said cigars, the price at which such or similar cigars were freely offered for sale and sold for home consumption to all purchasers in Havana, in the usual wholesale quantities and in the ordinary course of trade, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States, was in each instance the value returned by the appraiser.

(5) That at the time of exportation of said cigars, the price at which such or similar cigars were freely offered for sale and sold to all purchasers in Havana, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States, was in each instance the entered value.

I conclude as matters of law:

I   That the Cuban sales tax of 2.2 per centum is properly part of the foreign value, as defined in section 402 (c), as amended, of the Tariff Act of 1930, of the cigars in question.

II   That the proper basis for the determination of the value of the cigars in question is foreign value as so defined, and

III   That such foreign value in each instance is the value returned by the appraiser.

Judgment will issue accordingly.