(A. R. D. 57)

ATLAS TRADING COMPANY *v.* UNITED STATES

UNITED STATES *v.* ATLAS TRADING COMPANY

Entry Nos. 8154; 9594.

First Division, Appellate Term

(Decided March 4, 1955)

*Lawrence & Tuttle* (*George R. Tuttle* of counsel) for the importer.
*Warren E. Burger*, Assistant Attorney General (*Daniel I. Auster*, trial attorney), for the United States.

Before OLIVER, MOLLISON, and JOHNSON, Judges

MOLLISON, Judge: These are applications filed by both the importer and the collector for review of a decision and judgment of a single judge upon reappraisement appeals involving the value for appraisement purposes of two shipments of wool hooked rugs imported from Tientsin, China, during the Japanese occupation of that area. The application on behalf of the collector was subsequently abandoned, and judgment will issue dismissing the same.

The facts as to the invoicing, entry, and appraisement of the merchandise, the claims of the parties, the history of the litigation, and the record evidence are well set out in the opinion below, reported as *Atlas Trading Company* v. *United States*, 31 Cust. Ct. 381, Reap. Dec. 8243. It will, therefore, not be necessary to repeat those facts in this opinion.

In our decision in the case of *Atlas Trading Co.* v. *United States*, 26 Cust. Ct. 652, Reap. Dec. 7989, the record in which case was incorporated herein, this division of the court held that the value of the merchandise for tariff purposes was represented by the "first cost" thereof in FRB dollars, plus packing, as invoiced. It there appeared, as it does here, that "first cost" was the cost of the merchandise in the condition as manufactured, but not packed ready for shipment to the United States.

Our decision in that case was predicated upon certain facts which the plaintiff below, importer-appellant here, contends are shown also by the present record: (1) That merchandise, such as that here involved, was freely offered for sale for exportation to the United States by the manufacturers in Tientsin at first cost in FRB dollars; (2) that the transaction of sale did not involve United States currency; (3) that the transaction of sale was completely independent of the exchange transaction necessary to obtain an export permit; and (4) that there was a considerable excess over "first cost" and packing charges, which excess accrued to the Japanese Government or its agencies as an impost for the privilege of exporting the merchandise.

In addition to the evidence contained in the incorporated record, the plaintiff below offered additional evidence with respect to the particular transactions here involved. The evidence offered on behalf of the defendant was largely an explanation of the operation of the "link" system.

Although there appear to be some minor discrepancies, we are satisfied that the record shows that the Chinese manufacturers of the wool hooked rugs here involved received as payment therefor FRB dollars in the amount of the so-called "first cost" of the goods and that the charges incurred for placing the merchandise in condition, packed ready for shipment to the United States, were paid by the respective commissionaires or buying agents in FRB dollars. To bring this general statement down to a particular situation, it would appear that in the case of the merchandise covered by reappraisement No. 137197–A, the Chinese manufacturer, Hsin Chi Hao, offered the merchandise for sale to H. Barkovith & Co., as buying agent for Atlas Trading Company, at a unit value of FRB $1.66 for the "Belmont" quality, and at FRB $1.72¼ for the "Beverly" quality. Barkovith's affidavit concerning the same transaction, exhibit 1, shows slightly different unit values, but also a slightly different link rate than those shown on the consular invoice, but the total value in each case is near enough to be considered the same for practical purposes.

Moreover, it would appear from all of the evidence that Hsin Chi Hao received payment in FRB dollars on the offered price basis. Whether Barkovith paid Hsin with FRB dollars obtained at the "free" rate of US $0.05¾ per FRB $1 (said in his affidavit to be the rate which obtained on the date the invoice was consulated), or whether Hsin was paid with FRB dollars obtained from the Yokohama Specie Bank and a Chinese importer under the linking arrangement does not appear from the record. Whatever the fact was, and this will be referred to later, we may assume that Hsin was paid in FRB dollars on the basis of the offered prices, stated above, and that Barkovith was reimbursed for the FRB dollars he paid for the expenses of placing the merchandise in condition, packed ready for shipment to the United States.

Although it is not so stated in the record, apparently there was no physical or legal difference between FRB dollars obtained in exchange for US dollars in the free currency market in China and FRB dollars obtained from the bank and the Chinese importer under the linking system. From the offeror's standpoint, therefore, it could be said that the offered and paid prices were in FRB dollars and were the same.

From the standpoint of the offeree, however, the situation was somewhat different. Although the rugs were offered for sale to him

for exportation to the United States at a price expressed in FRB dollars, he knew he could not export them to the United States *unless he could show that he paid for them in US dollars at a so-called permissive link rate.* From the offeree's standpoint, therefore, the offered price in FRB dollars had to be translated into an offered price in US dollars at an artificial rate of exchange other than the free rate. In other words, to the offeree, it was an offer in terms of FRB dollars, but payable in US dollars at a semiofficial, permitted rate of exchange. It was, in effect, an offer in US dollars, for the number of FRB dollars quoted was actually only one factor which, when coupled with the link rate effected, would enable one to calculate the actual purchase price in US dollars.

It is, therefore, apparent that the mechanics of arranging the linking and of exporting the goods was tied to the transaction of sale. If we were to consider nothing but the offer, as importer-appellant would have us do, we would have an offer in accordance with the figures in Barkovith's affidavit in FRB dollars. But the offer cannot be considered apart from the sale it seeks. In fact, the sale is the evidence of the true nature of the offer, and the sale, that is to say, the transaction which was the result of the offer, was indubitably a sale in US currency.

It is true that the Chinese manufacturer received only FRB dollars in payment for the goods, but there was necessarily involved in the transaction of sale not only the transfer of ownership of the goods but also the payment by the American purchaser of US dollars to be converted at a permitted link rate into FRB dollars. It is this tying up of the mechanics of exportation with the transaction of sale by which the case at bar differs from the cases of *Sternfeld* v. *United States*, 12 Ct. Cust. Appls. 172, T. D. 40065, and *United States* v. *Tadross & Co. et al.*, 14 Ct. Cust. Appls. 10, T. D. 41528, cited by the appellant and by this division in the earlier *Atlas Trading Co.* case, *supra*. In each of those cases, the tax imposed upon exportation was not related to and involved in the transaction of sale; it was an entirely independent matter. Here, the sale, linking, and exportation were all involved together, and it cannot be said that any part of the purchase price paid was an impost paid for the privilege of exportation.

As revealed by the record evidence, the transaction involved in the case of the merchandise covered by reappraisement No. 137805–A was, in effect, on the same basis as the sale covered by reappraisement No. 137197–A. In reappraisement No. 137805–A, it appears that the commissionaire, Waldron, declared on the consular invoice that a Chinese company owned by him, the Mei Ho Yung Carpet Co., was the seller and shipper. Although in his testimony Waldron used expressions indicating that he "sold" merchandise to the Atlas

Trading Company, it appears that his function was as an intermediary, advancing money to the actual manufacturers of the rugs in question and reimbursing himself out of the proceeds of the sale. Apparently, the Mei Ho Yung Carpet Co. stood in the position of Chinese seller and exporter for the purposes of exchange and export matters.

Importer-appellant contends that one could buy merchandise such as that here involved in FRB dollars acquired in any manner and would not have to engage in any linkage transaction *so long as it was not attempted to export the goods*. It must be remembered, however, that we are here concerned with the value of goods *offered for sale for exportation to the United States*—in other words, the offer contemplates a transaction of such nature that the goods may be exported to the United States. In the situation envisioned by the appellant, the goods could not be actually offered for sale for exportation to the United States, inasmuch as both parties would know that no exportation of goods purchased and paid for under such circumstances could take place. The record shows that, under the circumstances that obtained in Tientsin at the time in question, only goods involved in a sale which was arranged on a linking basis could be the subject of exportation.

It may well be that either Barkovith or Waldron, or both of them, actually paid off the actual Chinese manufacturers of the merchandise at bar in FRB dollars of their own funds acquired otherwise than as the result of the transactions at bar. In so doing, however, they merely placed themselves in the position of the sellers *pro tanto* and reimbursed themselves out of the proceeds of the transaction actually carried on under the linking basis. This does not alter the fact that it was an inseparable part of the sales transaction that it be carried out under a linking arrangement.

From the explanation which has been offered by the defendant in this case with respect to the linking system, it is clear that there was no considerable excess between the price paid by the American importer, *converted into FRB dollars at the link rate*, and the price received by the Chinese exporter in FRB dollars, *when considered on the link rate basis*. It is only when the price paid in US dollars is compared with the price received by the Chinese exporter in FRB dollars converted back to US dollars at the free rate that an apparent excess results. This is, however, of no concern for appraisement purposes under the circumstances of this case, in view of the fact that the real currency of the offer and sale was US dollars.

We are satisfied from the entire record that the decision and judgment below are correct. We, therefore, adopt and incorporate by reference as though here fully set out each finding of fact and each conclusion of law made by the court below.

Judgment will, therefore, issue (1) dismissing the application for review filed on behalf of the collector and (2) affirming the decision and judgment below.