(Reap. Dec. 10144)

GUCKER & GOLDSTEIN *v.* UNITED STATES

Entry No. 458292.

(Decided January 22, 1962)

*Jordan & Klingaman* (*Edward F. Jordan* of counsel) for the plaintiff.
*William H. Orrick, Jr.,* Assistant Attorney General (*Richard E. FitzGibbon* and *Samuel D. Spector,* trial attorneys), for the defendant.

Ford, Judge: This matter is now before me after having been submitted by counsel for the respective parties on the following written stipulation:

IT IS HEREBY STIPULATED AND AGREED by and between counsel for the parties hereto—

1– That the merchandise the subject of the above-entitled reappraisement appeal is nylon laces exported from France on August 23, 1957, and entered at the port of New York on August 28, 1957.

2– That said laces were purchased in Calais, France, on August 19, 1957, by the importer, plaintiff herein, through its purchasing agent Simon Dubois of Calais, from Boot & Co., the manufacturer thereof; and that said laces were purchased in French francs in the amounts stated in the invoice without any restrictions or conditions, but such purchase and sale transaction was subject to such decrees and regulations of the French Government as were then in effect controlling contracts for, invoicing of, and exchange settlement in connection with the payment for nylon laces.

3– That the invoice prices plus the cost of packing as invoiced, both in French francs, represent the prices at which nylon laces such as or similar to those here involved were, on or about the date of exportation herein, freely offered for sale in Calais and the other principal markets in France, to all purchasers in the usual wholesale quantities and in the ordinary course of trade for export to the United States, and that neither such nor similar nylon laces were freely offered for sale or sold in France for domestic consumption therein.

4– That, in accordance with the provisions of Sec. 522(c), Tariff Act of 1930, as amended, the Federal Reserve Bank of New York certified two rates of exchange for the French franc for August 23, 1957, the date of exportation herein, as follows: Category (1) $0.00285795 (designated "Nominal rate") or approximately 350 francs to the dollar, and Category (2) $0.00237437 or approximately 420 francs to the dollar. (Published in T.D. 54431)

5– That the involved laces were appraised in French francs at the prices given in the invoice, the appraiser adopting the examiner's advisory notation on the invoice reading, "Appraised in French francs in Category * * * (1)", action consistent with the instructions of the Commissioner of Customs in T.D. 54540.

6– That, for dates prior to August 12, 1957, the Federal Reserve Bank, for a considerable period of time, certified a single rate for the French franc of approximately 350 francs to the dollar; and that the certification of two rates on and after August 12, 1957, resulted from a change in the fiscal policy of the French Government hereinafter referred to.

7– That the Government of France, by Decree No. 57–910 of August 10, 1957, published in the Journal Officiel for August 11, 1957, adopted certain monetary measures, effective August 12, 1957, applicable to export transactions involving all products; that said measures resulted in the settlement of export transactions in a foreign currency on the basis of conversion of the involved foreign currency into francs by an authorized commercial bank on the basis of the price of such foreign currency in the Paris market on the date of settlement, plus a payment of 20 per cent; that, at all times material herein, the price of the U.S. dollar in the Paris market was 350 francs to the dollar and that, accordingly, settlement for an export in U.S. dollars would result in the payment by the bank of 420 francs for each dollar included in the amount of the settlement (Art. 1 and 2, Exhibit B, p. 4; Art. 1–3, Exhibit B, p. 5); and that a photostatic

copy of the said decree as published in the Journal Officiel and of a correct and true translation of the pertinent parts of the same may be received in evidence and marked Exhibits A and B, respectively.

8– That, simultaneously with the issuance of the aforesaid decree, the French Government suspended its operation with respect to the exportation of certain products enumerated in List III appended to the decree, which list includes nylon laces of the kind here involved (Art. 3, Exhibit B, p. 11).

9– That, as to the products enumerated in List III, including the nylon laces here involved, the instructions implementing the decree and financial provisions specified that, on exportation, such products were to be paid for in a foreign currency at the price for such currency in the Paris market on the date of settlement and that the invoice should so indicate (Art. 5, Exhibit B, p. 6; Exhibit B, p. 12) ; and that such payment was to be made to an authorized commercial bank for the account of the foreign exchange stabilization fund (Art. 3, Exhibit B, p. 5; Art. 5 and 6, Exhibit B, p. 6).

10– That the aforesaid financial provisions and instructions, in the case of products enumerated in List III including the nylon laces here involved, resulted in the settlement of such export transactions on the basis of conversion of the involved foreign currency into francs by an authorized commercial bank at the rate of exchange based on the Paris market rate, approximately 350 francs to the dollar in the case of U.S. currency. The bank paid to the exporter the amount of his invoice based on 350 francs to the U.S. dollar and in addition deposited to the account of the foreign exchange stabilization fund 20 per cent of the value of the francs paid or 70 francs deposited for each 350 francs paid to the exporter. (Art. 5, Exhibit B, p. 6; last 2 paragraphs Exhibit B, p. 8)

11– That, in the instant case, the financial provisions and instructions, as set forth in paragraphs 9 and 10 above, were complied with by the plaintiff, as purchaser, by the seller, and by the authorized French bank in Calais, France, the seller realizing a net return of about 350 francs per U.S. dollar received from the purchaser of the nylon laces and the authorized bank depositing about 70 francs for each 350 francs paid to the exporter, to the account of the foreign exchange stabilization fund.

As indicated in the above stipulation, certain Government decrees and their translations were attached to the stipulation and were marked exhibit "A" and exhibit "B." From the foregoing, it is apparent the parties have agreed that the proper basis of appraisement of the merchandise involved herein is export value of such merchandise. It has been further agreed that the invoiced price in French francs, plus the cost of packing, as invoiced, is the correct value.

By virtue of the decree of the Government of France, No. 57–910 of August 10, 1957, and various implementing decrees, it would appear, with respect to the situation involved herein, that the United States dollar was exchanged at the Paris market rate (350 francs to the dollar), plus 20 per centum (420 francs to the dollar). However, since nylon lace was on the list which suspended the operation at this rate of exchange, the dollars were converted at the Paris market rate at 350 francs to the dollar, plus 20 per centum, but the latter (70 francs) was returned for the account of the foreign ex-

change stabilization fund. Accordingly, the exporter received 350 francs per dollar for his merchandise.

There is also agreement by and between counsel for the respective parties that the Federal Reserve Bank of New York, by virtue of and in accordance with section 522(c) of the Tariff Act of 1930, as amended, certified two rates of exchange for the French franc for August 23, 1957, the date of exportation herein, viz, category (1) $0.00285795 (designated nominal rate), equivalent to approximately 350 francs per dollar; and category (2) $0.00237437, equivalent to approximately 420 francs per dollar. (See T.D. 54431.)

The merchandise was appraised at the invoiced value in French francs in category (1). The issue thus presented to the court is whether an amount of money paid to an agency of the Government of the country of exportation is properly part of the export value, as defined in section 402(d) of the Tariff Act of 1930.

Counsel for plaintiff contends that, since the seller received only 350 francs per dollar, no benefit accrued to him and, hence, the additional payment, the difference between 350 francs per dollar and 420 francs per dollar, amounts to an export tax. If this does amount to an export tax and fits within the framework as set forth in the cases of *Sternfeld* v. *United States*, 12 Ct. Cust. Appls. 172, T.D. 40065, and *United States* v. *Tadross & Co. et al.*, 14 Ct. Cust. Appls. 10, T.D. 41528, then, the contention of plaintiff should be sustained. The court, in the *Sternfeld* case, *supra*, held that an export tax is one which is imposed or accrues *at the time* when the merchandise is exported, or at the time of exportation. The court, in both the *Sternfeld* and the *Tadross* cases, *supra*, held that such a tax could not be included within the export value, unless the market value included the tax.

An examination of the facts involved herein, particularly with respect to when the tax occurs, establishes that the tax or action of France in retaining the difference between 350 francs and 420 francs per dollar in an economic stabilization fund was imposed at the *time of settlement or exchange of currency* and not at the time of exportation.

A further review of the decrees establishes that the retention of funds applied to imports as well as exports. Exhibit "B," containing a translation of ministerial decree of August 10, 1957, clearly supports the foregoing by providing as follows:

### Financial Provisions

Ministerial Decree of August 10, 1957
Journal Officiel of August 11, 1957

Article 1—The withholding shall be paid by every purchaser of foreign exchange at the time of the settlement of the counter-value in francs of this foreign exchange.

The payment shall be collected by any seller of foreign exchange at the time of the collection of the counter-value in francs of said foreign exchange.

Art. 2—The rate of the withholding or that of the payment applies to the counter-value in francs of the foreign exchange bought or sold.

From the foregoing, I am firmly convinced that the action of France in this matter does not amount to an export tax, but is merely a tax on the conversion of currency involving either imports or exports.

A similar factual situation was involved in the recent case, *United States* v. *International Packers, Limited*, 48 C.C.P.A. (Customs) 80, C.A.D. 769. In the *International Packers* case, *supra*, the Argentine Government retained 15 per centum of the amount of pesos at the time of conversion on merchandise, such as was involved therein, and the seller received the invoiced amount of pesos, less 15 per centum. That case, however close factually, is not controlling herein, since the basis of appraisement therein was United States value and not export value, as is the situation herein. Section 402(e) of the Tariff Act of 1930, as amended, provides for United States value and utilizes certain language peculiar to said value. In order to determine United States value under section 402(e), the statute provides for "and other necessary expenses from the place of shipment to the place of delivery." Therefore, our appellate court held that the 15 per centum retained by Argentina was not part of the dutiable value, since it was a necessary expense and, as such, was an allowable deduction. The language of section 402(d), involved herein, does not contain any such language. The court construed the retention tax to amount to an export tax and not merely a tax for the conversion of currency, in the case of *International Packers*, *supra*. The record in the case at bar establishes the retention of francs by the French Government related to both imports and exports and, as indicated, *supra*, is not, in my opinion, an export tax, but is merely a tax on currency conversion. I am well aware of the fact that our appellate court, in the *International Packers* case, *supra*, agreed with the first appellate division of this court with respect to the Argentine retention tax as not being a tax on the conversion of currency. The court found the tax to be applicable to the "exchange for a particular purpose." The situation in the matter now before me applies to two particular purposes, i.e., import and export. While we are not interested in the transactions relating to imports into France, the law, as written, applies to both imports and exports and, as a result, is not an export tax, such as would be considered deductible in determining value. In addition, in the *International Packers* case, *supra*, the law required the payment of the tax before permission to export was granted. A review of the stipulated facts, in the case at bar, as well as the French law attached to said stipulation, does not establish that payment of the 70 francs per dollar was required before an export permit would be granted. The *International Packers* case, *supra*, is, therefore, clearly distinguishable and not controlling herein. Plaintiff has, therefore, failed to overcome

the presumption of correctness attaching to the value found by the appraiser.

Based on the foregoing, I find as matters of fact:

1. That the merchandise involved herein consisted of nylon laces, exported from France on August 23, 1957.

2. That such or similar merchandise was freely offered for sale for exportation to the United States, in the principal markets of France, in the usual wholesale quantities and in the ordinary course of trade, to all purchasers.

3. That neither such or similar nylon laces were, on or about the date of exportation herein, freely offered for sale or sold in France for home consumption.

4. That, in accordance with the law in France applicable to the exportation of certain products, including the nylon lace here involved, in effect at the time of exportation herein:

    (a) The involved nylon laces were paid for in United States dollars at the rate of approximately 350 francs to the dollar.

    (b) That said payment in United States dollars was made to an authorized commercial bank in France, acting as agent for the Government of France.

    (c) That said authorized bank converted the United States dollars into francs at the rate of approximately 420 francs to the dollar.

    (d) That the seller herein received from said bank the invoiced amount of francs, the bank retaining 70 francs to the dollar for the account of the foreign exchange stabilization fund, which is an agency of the Government of France.

I conclude as matters of law:

1. That the correct dutiable value of the merchandise involved herewith is export value, within the purview of section 402(d) of the Tariff Act of 1930, there being no foreign value in existence for such or similar merchandise.

2. The export value for the involved merchandise is the appraised value herein.

Judgment will be rendered accordingly.