(A. R. D. 54)

BORDER BROKERAGE CO. *v.* UNITED STATES

Entry No. 2533–E.

## First Division, Appellate Term

(Decided January 5, 1955)

*Lawrence & Tuttle* (*George R. Tuttle* of counsel) for the appellant.
*Warren E. Burger*, Assistant Attorney General (*Samuel D. Spector*, trial attorney), for the appellee.

Before OLIVER, MOLLISON, and WILSON, Judges

MOLLISON, Judge:   This is an application for review of a decision and judgment rendered by Ekwall, J., upon an appeal for reappraisement of an importation of mixed feed oat screenings from Canada. The sole issue between the parties is the correctness of the inclusion by the appraiser of an equalization fee in his return of export value of the screenings in question.   The decision of the court below, reported in 30 Cust. Ct. 496, Reap. Dec. 8195, particularly at pages 497 to 501, inclusive, summarizes the facts as developed by the record and will

not be repeated or elaborated upon in this opinion, except as may be necessary.

Counsel for the appellant has indicated in the brief filed in its behalf that the facts themselves are not seriously in dispute in this case, but that "The conflict between the plaintiff and the government arises over the implications of the facts." Insofar as the decision of the matter rests upon implications or inferences to be drawn from the record facts, we are of the opinion that the court below was warranted, upon the record before it, in making the findings and reaching the conclusions stated in its opinion. We are also of the opinion, however, that some of the inferences which counsel for the appellant here contends should have been drawn from the record facts, if relied upon, should have been the subject of proof directly, rather than left to implication.

This case is essentially a retrial of the issue raised in *Henry D. Gee Co.* v. *United States*, 21 Cust. Ct. 305, Reap. Dec. 7621, the decision of the trial court in which, adverse to the plaintiff, was, on appeal, affirmed by this division of the court (*Same* v. *Same*, 24 Cust. Ct. 508, Reap. Dec. 7772) on the ground that the plaintiff had failed to make out a *prima facie* case sufficient to overcome the statutory presumption of correctness attaching to the value found by the appraiser. In our decision in that case, the record in which was incorporated herein, we said:

As we see it, the precise nature, characteristics, and incidence of the [equalization] fee are not well enough delineated by the record to enable the court to come to any sound conclusion as to the exact status of the fee from a valuation standpoint. * * *

Effort has been made in this case by both parties to present the facts with respect to the manner in which the equalization fee was applied in Canada to the exportation of mixed feed oat screenings at the time the merchandise here in issue was exported. However, it must be said that the bare recital of the facts shown by the record does not, in and of itself, establish the correctness or incorrectness of the inclusion of the equalization fee in the value for tariff purposes.

We think there can be no doubt from the facts as shown by the record that, so far as the Canadian Government requirements were concerned, there was no *legal* obligation to pay the equalization fee, which was a condition precedent to securing an export permit, until the moment when it was sought to physically carry the merchandise out of Canada, i. e., to export it. From this, counsel for the appellant argues that the fee was one which accrued only upon exportation of the merchandise and formed no part of the price at which the merchandise itself was offered for sale, nor was it a cost, charge, or expense incident to placing the merchandise in condition, packed ready for shipment to the United States.

If the only fact before us were the fact that there was no legal obligation to pay the equalization fee until it was sought to export the merchandise, perhaps the implication drawn by counsel for the appellant would be warranted. However, the record contains other facts concerning the situation which obtained in Canada with respect to the sale of mixed feed oat screenings for exportation to the United States which, we think, require that a different implication be placed upon the status of the equalization fee. The record shows (1) that only persons or firms resident in Canada could apply for export permits (a condition to the issuance of which was the payment of the equalization fee); (2) the applicant at the time of application had to be the owner of the goods for which he requested an export permit "in store in the position from which he intends to export them;" (3) the permit, when issued, was not transferable; (4) export permits were limited by the Canadian Wheat Board to certain daily quantities; and (5) after payment of the fee and issuance of the permit, it was not cancelable nor could any refund be made if the grain was not exported, nor would refund be made for undershipments.

Counsel for the appellant takes exception to and makes the subject of assignment of error certain conclusions drawn by the trial court from the facts mentioned above. The following excerpt from the trial court's opinion shows in italics the conclusions complained of:

* * * The merchandise could be exported only with the approval of the Canadian Wheat Board and upon payment of the equalization fee. At the period involved herein, application for an export permit could be made only by an individual or firm resident in Canada who was then the owner of the merchandise. Therefore, a foreign purchaser, not a resident of Canada, could not obtain a permit and pay the fee himself. *The permit had to be secured by the Canadian owner prior to the sale of the goods for exportation and the equalization fee was paid at the time of application for the permit.* Moreover, the Canadian Wheat Board was granting permits for the exportation of a limited amount of merchandise. *As a practical matter, therefore, purchases for export would be made only after an export permit had been obtained or subject to obtaining the same.* Otherwise, the purchaser might find that he had bought goods for export but was not permitted to send them out of the country. *There is no evidence in the record that this merchandise was ever offered for sale at a price which did not include the equalization fee or that purchaser ever attempted to obtain an export permit and pay the fee himself.*

*Another consideration is the fact that the amount of the equalization fee was determined as of the date the application was made and not as of the date of exportation.* In the instant case, for example, at the time application for export was made and the fee paid, it was fixed at 22 cents per bushel, while at the time of exportation it was fixed at 14 cents per bushel. *It is therefore, not a tax which accrued on the date of exportation of the merchandise but a fee payable in advance and included in the offered price of the goods.* The seller first obtained the permit and paid the fee and then offered the merchandise at a price which included the amount of the fee he had already paid. He did not offer the merchandise at a certain price plus whatever the equalization fee might be on the date of exportation. * * * [Italics added.] [30 Cust. Ct. 496, at pp. 502–503.]

Counsel for the appellant argues that it is more logical to assume that the export permit would be secured *after* the sale but prior to the transfer of title because (1) the quantity purchased would not be determinable until the sale, and the permit would have to cover that quantity; (2) under Canadian law, title in a c. i. f. sale, such as that here involved, presumably would not pass until delivery of the goods to the carrier, and, consequently, the Canadian seller would be the legal owner and could apply for the export permit after the sale but prior to delivery; (3) there is no evidence that the limitation by the Canadian Wheat Board of amounts of grain for which permits could be issued resulted in a scarcity of permits; and (4) merchants would naturally secure permits after sale rather than prior to sale because of the well-known aversion to paying taxes in advance.

It will be seen from the foregoing that although the record in the case at bar contains more facts than were supplied in the *Henry D. Gee Co.* case, *supra*, much which might well have been established by direct evidence was left to inference. The ordinary course of trade, or the manner of doing business, in the principal markets of Canada in the sale of mixed feed oat screenings for exportation to the United States at the time of exportation of the merchandise herein, and under the impact of the Canadian Wheat Board's regulations on the subject, could, we are sure, have been shown by proper evidence, without leaving such vital matters as business practice and foreign law to be determined by inference.

We are of the opinion that, on the record presented, the facts in the case tend more to support the inference drawn by the trial court that, in the ordinary course of trade, the permit was secured by the Canadian owner prior to sale than the inference which counsel for the appellant would have drawn that the permit generally was secured after sale but prior to the transfer of title. Certainly, in each of the two transactions covered by the present record, that in the instant case and that in the *Henry D. Gee Co.* case, it appears that the permit had been secured prior to sale, and the merchandise offered at a price which included the equalization fee actually paid by the Canadian seller.

An interesting, if not necessarily material, sidelight is revealed in the evidence, from which it appears that if the equalization fee actually paid by the seller was greater than the fee which was chargeable on the date of sale or of exportation, the fee actually paid was included in the price, whereas if the fee chargeable on the date of sale or of exportation was greater than the fee actually paid, the fee chargeable on the date of sale or of exportation was included in the price. It would, therefore, appear that the Canadian seller could not lose by the fluctuations of the equalization fee, but might possibly gain.

We agree with the contention of counsel for the appellant that the mere fact that a charge is included in an offered price is not necessarily

conclusive of the fact that it is part of the market value. As an example, the offered price in the case at bar included a charge for freight to Seattle, which the Government does not contend is part of the market value.

It must be remembered, however, that we are here considering only the matter of export value of the imported merchandise; that foreign value is not involved, being in any case not higher than the export value, without the addition of the equalization fee. To determine the export value of the screenings here involved, we must look to—

* * * the market value or the price, at the time of exportation of [the merchandise here involved] * * * at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, *for exportation to the United States*, plus, when not included in such price, the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States. [Sec. 402 (d), Tariff Act of 1930.] [Italics added.]

We are, therefore, interested only in offers for sale *for exportation to the United States*. So far as the record before us shows, such offers would have been meaningless, valueless, and possibly incomplete in fact and in law if there was not an export permit already *in esse* for the particular goods involved. Although it would seem that mixed feed oat screenings are fungible goods, and that, consequently, sales thereof would not ordinarily be sales of a particular lot of mixed feed oat screenings, nevertheless, it appears that, under the regulations issued by the Canadian Wheat Board and in effect at the time of exportation of the merchandise at bar, the applicant for an export permit was required to be "the owner of the quantity of Mixed Feed Oats for which he requests an export permit, in store in the position from which he intends to export them, at the time he makes application." It would seem to follow from this that (1) the permit was issued against a particular lot of screenings, and (2) consequently, when he offered the screenings for sale *for export*, the Canadian owner was also offering the use and value of the permit that specifically applied to that particular lot of screenings, and without which it could not be exported.

We are of the opinion that the record fully supports the decision and judgment of the court below and that it was warranted in finding the facts stated at the conclusion of its opinion and in reaching the conclusions of law set forth therein.

We, therefore, find as facts:

(1) That the merchandise involved herein consists of mixed feed oat screenings exported from Canada on or about May 27, 1948.

(2) That at the time of exportation of the merchandise involved herein such or similar merchandise was not sold for home consumption

in Canada at a price higher than the price for exportation to the United States.

(3) That the market value or the price at the time of exportation of such merchandise to the United States, at which such or similar merchandise was freely offered for sale to all purchasers in the principal markets of Canada, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States, included the amount of the equalization fee being charged on the date of exportation, and that such value was the appraised value.

We conclude as matters of law:

(1) That export value, as that value is defined in section 402 (d) of the Tariff Act of 1930, is the proper basis for determining the value of the merchandise involved herein.

(2) That such value is the appraised value.

The judgment of the court below is, therefore, affirmed and judgment will issue accordingly.